## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| CHANGZHOU TRINA SOLAR ENERGY CO. LTD.; <br> TRINA SOLAR (CHANGZHOU) SCIENCE AND <br> TECHNOLOGY CO., LTD.; <br> AND TRINA SOLAR (U.S.), INC. <br>                             Plaintiffs, <br>         v. <br> UNITED STATES, <br>                             Defendant. | Court No. 17-00199 |

## **COMPLAINT**

     Pursuant to Rule 3(a)(2) of the Rules of the United States Court of International Trade, Plaintiffs Changzhou Trina Solar Energy Co., Ltd.; Trina Solar (Changzhou) Science and Technology Co., Ltd.; Trina Solar (U.S.) Inc., by and through their counsel, allege and state as follows:

## **JURISDICTION**

     1.     Plaintiffs bring this action pursuant to, and in accordance with, section 516A(a)(2) of the Tariff Act of 1930, as amended (codified at 19 U.S.C. § 1516a(a)(2)), contesting the final results issued by the U.S. Department of Commerce ("Commerce") in <u>Certain Crystalline Silicon Photovoltaic Products From the People's Republic of China: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2014-2016</u>, 82 Fed. Reg. 32.170 (Dep't Commerce, July 12, 2017), ("<u>Final Results</u>"), as they apply specifically to Plaintiffs. This Court has jurisdiction over this matter under 28 U.S.C. § 1581(c) and 19 U.S.C. § 1516a(a)(2).

**Court No. 17-00199**                                                                                                                     **Complaint**

## STANDING

2. Plaintiffs, Changzhou Trina Solar Energy Co., Ltd., ("TCZ") and Trina Solar (Changzhou) Science and Technology Co., Ltd., ("TST") are foreign producers and exporters of subject merchandise. Trina Solar (U.S.) Inc., ("TUS") is a U.S. importer and reseller affiliated with TCZ and TST. TCZ, TST, and TUS were respondents in the administrative review that is contested here. Plaintiffs therefore are interested parties within the meaning of 19 U.S.C. § 1677(9)(A). Plaintiffs, TCZ, TST, and TUS, each actively participated in the administrative review through submission of factual information and/or written argument and thus are parties to the proceeding as defined in 19 C.F.R. §351.102(b). As interested parties that actively participated in the underlying administrative proceeding, Plaintiffs have standing pursuant to 19 U.S.C. § 1516a(d) and 28 U.S.C. § 2631(c).

## TIMELINESS

3. The subject <u>Final Results</u>, which are being challenged herein, were published in the <u>Federal Register</u> on July 12, 2017. <u>Certain Crystalline Silicon Photovoltaic Products From the People's Republic of China: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2014-2016</u>, 82 Fed. Reg. 32.170 (Dep't Commerce, July 12, 2017). On July 17, 2017 – within 30 days after the publication of the subject final results – Plaintiffs filed a summons to initiate this action. Accordingly, this action was commenced within the period specified in 19 U.S.C. §§ 1516a(a)(2)(B)(iii). This Complaint is being filed within 30 days after the date on which the summons was filed. Therefore, according to the provisions of 19 U.S.C. § 1516a(a)(2)(A)(i), 28 U.S.C. § 2636(c), and Rule 3(a)(2) of the Rules of the U.S. Court of International Trade, this action has been timely brought.

## STANDARD OF REVIEW

4.      This Court reviews final determinations issued by Commerce pursuant to 19 U.S.C. § 1675(a) to determine whether they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).

## PROCEDURAL HISTORY

5.      On February 18, 2015, Commerce published in the Federal Register the antidumping duty order covering crystalline silicon photovoltaic products from the People's Republic of China. See <u>Certain Crystalline Silicon Photovoltaic Products From the People's Republic of China: Antidumping Duty Order; and Amended Final Affirmative Countervailing Duty Determination and Countervailing Duty Order</u>, 80 Fed. Reg. 8592 (Dep't Commerce, February 18, 2015) (antidumping duty and countervailing duty order) (hereinafter "Order"). On April 7, 2016, the Department published in the Federal Register a notice initiating an antidumping duty administrative review of solar products from the PRC covering 27 companies/company groupings for the period July 31, 2014 through January 31, 2016. See <u>Initiation of Antidumping and Countervailing Duty Administrative Reviews and Request for Revocation in Part</u>, (April 7, 2016), ("<u>Initiation Notice</u>").

6.      In the <u>Initiation Notice</u>, Commerce indicated that, in the event that Commerce limited the respondents selected for individual examination in accordance with section 777A(c)(2) of the Tariff Act of 1930 (the Act), as amended, Commerce would select mandatory respondents for individual examination based upon volume data contained in responses to a limited number of quantity and value questionnaires that it was issuing in the review based on U.S. Customs and Border Protection data for U.S. imports during the POR.

7.      On May 24, 2016, Commerce determined that it was not practicable to examine all of the numerous exporters/producers of subject merchandise for which a review was

requested, and as a result, pursuant to section 777A(c)(2)(B) of the Act, Commerce chose to fully examine individually only one mandatory respondent, TCZ and TST, collectively "Trina". <u>See Memorandum from Jeff Pedersen, Senior International Trade Compliance Analyst, Office IV, to Abdelali Elouaradia, Director, Office IV, regarding "2014-2016 Antidumping Duty Administrative Review of Certain Crystalline Silicon Photovoltaic Products from the People's Republic of China: Respondent Selection,</u>" dated May 24, 2016 ("Respondent Selection Memorandum").

8. On May 26, 2016, Commerce issued its antidumping duty questionnaire to Trina. Trina submitted responses to Commerce's questionnaire and supplemental questionnaires from June 2016 through February 2017. In response to the Department's June 30, 2016 request for comments on surrogate country selection and surrogate values ("SVs"), SolarWorld Americas Inc., ("Petitioner") and Trina submitted comments and/or rebuttal comments on surrogate country selection and SVs from August 2016 through January 2017.

9. On March 7, 2017, Commerce published in the <u>Federal Register</u> its preliminary results of the first administrative review, in which it found that Trina had generated greater than *de minimis* dumping margins during the review period. Specifically, Commerce assigned a rate of 14.70% to Trina. For non-individually examined cooperative respondents, Commerce calculated and assigned a weighted-average dumping margin of 14.70%. <u>See Certain Crystalline Silicon Photovoltaic Products from the People's Republic of China: Preliminary Results of Antidumping Duty Administrative Review and Preliminary Determination of No Shipments; 2014-2016</u>, 82 Fed. Reg 12,793 (March 7, 2017), (Dep't Commerce March 7, 2017) ("<u>Preliminary Results</u>").

10. In April 2017, Commerce received case briefs and rebuttal briefs from interested

parties, including Trina.

11.     On July 12, 2017, Commerce published in the Federal Register its final results of the first administrative review.  See Final Results, 81 Fed. Reg. 39,905 (Dep't Commerce June 20, 2016).  In the Final Results, Commerce made adjustments to antidumping duty calculation for Trina.  These changes resulted in the assignment of a rate of 9.61% to Trina and the separate rate respondents.

### ISSUES PRESENTED BY THE ACTION AND PLAINTIFFS' STATEMENT OF CLAIMS

13.     In the following respects, and for other reasons apparent from the record of the administrative proceeding, Commerce's final results in its antidumping duty administrative review are unsupported by substantial evidence and otherwise not in accordance with law.

### COUNT ONE

14.     Paragraphs one through thirteen are incorporated herein by reference.

15.     In the final results of review, Commerce failed to comply with the statute by excluding from the calculation of Trina's net U.S. selling price an adjustment to account for export subsidies applied in the companion countervailing duty investigation and order.  Where goods are subject to both antidumping duties and countervailing duties, the statute instructs that, "the price used to establish export price and constructed export price shall be-(1) increased by…..(C) the amount of any countervailing duty imposed on the subject merchandise under part I of this subtitle to offset an export subsidy,…"  See 19 U.S.C. §1677a(c)(1)(C).

16.     The Department has agreed that the purpose of adding countervailed export subsidies to U.S. prices is to prevent AD duties from constituting a second remedy for export subsidies. See e.g., Final Determination in the Less-Than-Fair-Value Investigation of Coated Free Sheet Paper from the People's Republic of China, 72 Fed. Reg. 60632, (Oct. 17, 2007), and

accompanying Issues and Decision Memorandum, Comment 2 ("CFS Paper"). In CFS Paper and in other cases, the Department has acknowledged that the export subsidy offset is statutorily required, stating, "the statute plainly requires the Department to add the full amount of CVDs imposed to offset export subsidies to the U.S. price." Id.

17.    The Department countervailed the China Ex-Im Bank Export Buyer's Credit Program as an export subsidy. See Certain Crystalline Silicon Photovoltaic Products From the People's Republic of China: Preliminary Results of Countervailing Duty Administrative Review and Preliminary Intent To Rescind, in Part; 2014-2015, 82 Fed. Reg. 12562 (March 6, 2017), Preliminary Decision Memorandum, page 41. In the countervailing duty investigation of solar products from China, the Department considered whether to offset the antidumping duty rate for export subsidies, and specifically the "EX-IM Buyer's Credit" subsidy program. See Certain Crystalline Silicon Photovoltaic Products From the People's Republic of China: Final Determination of Sales at Less Than Fair Value, 79 Fed. Reg. 76970 (Dec. 23, 2014), Issues and Decision Memorandum, Comment 3.

18.    The Department countervailed the Ex-Im Buyer's Credit Program at a rate of 10.54 percent in the original investigation for Trina.[1] See Trina Factual Information Submission, Exhibit L, (Jan. 30, 2017), Amended Final Determination, Analysis Memorandum for Changzhou Trina Solar Energy Co., Ltd., Feb 10, 2015.

19.    In the Final Results, the Department stated that it did not make a determination in the CVD investigation of certain solar products from the PRC that the Export Buyer's Credits Program was an export subsidy and that its determination to countervail the Export Buyer's

---

[1] See Trina Factual Information Submission, Exhibit L, (Jan. 30, 2017), Amended Final Determination, Analysis Memorandum for Changzhou Trina Solar Energy Co., Ltd., Feb 10, 2015.

Credit Program was based on facts otherwise available with an adverse inference, as a result of non-cooperation by the Government of China.

20. The Department's determination that the Export Buyer's Credit Program was not countervailed as an export subsidy is unsupported by substantial evidence. Similar, the Department's statement that the Export Buyer's Credit Program is not contingent on export is contradicted by record evidence.

21. By ignoring evidence and prior determinations, Commerce reached an erroneous conclusion that resulted in its failure to comply with 19 U.S.C. §1677a(c)(1)(C).

## COUNT TWO

22. Paragraphs one through thirteen are incorporated herein by reference.

23. In the final results, in determining the total pool of sales upon which to calculate Trina's antidumping duty rate, Commerce included sales that entered the United States prior to the first day of the period of review (i.e., the first day of suspension of liquidation in this proceeding).

24. The Department previously has determined that sales of merchandise that are linked with entries prior to the suspension of liquidation are not subject merchandise (and therefore are not subject to review by the Department), and that only sales of merchandise that entered the United States after suspension of liquidation are properly reviewable sales. See, e.g., Stainless Steel Plate in Coils From Taiwan: Final Rescission of Antidumping Duty Administrative Review, 66 Fed. Reg. 18610, 18611-18612, Comment 1 (April 10, 2001), citing, Certain Stainless Steel Wire Rods from France, 61 Fed. Reg. 47874, 47875 (September 11, 1996).

25. The Department stated that Trina did not link sales in its submitted U.S. sale data

to the pre-suspension of liquidation entries.

26. Trina explained that its sale data included pre-suspension of liquidation entries in the response to the quantity and value of sales questionnaire, the original response to Section C (U.S. Sales) of the original questionnaire, and in the response to a supplemental questionnaire. Trina specifically identified those sales in the original Section C response and in the supplemental questionnaire response.

27. Despite clear and repeated explanations regarding the sales that entered subject to suspension of liquidation, Commerce never inquired further and concluded in the Final Results that Trina failed to demonstrably link sales in its U.S. sale file to pre-suspension of liquidation entries. Commerce's conclusion is not supported by substantial evidence.

**COUNT THREE**

28. Paragraphs one through thirteen are incorporated herein by reference.

29. In its final results, Commerce selected an unreasonable surrogate source to value the nitrogen that Trina used in the production of subject merchandise. Specifically, to value Trina's nitrogen gas consumption, Commerce unlawfully and unreasonably relied on a value from Thai import data under HTS 2804.30 despite substantial record evidence that this value was unreliable, erroneous, and inaccurately valued Trina's nitrogen consumption. Commerce's surrogate value selection for nitrogen is not supported by substantial evidence.

**COUNT FOUR**

30. Paragraphs one through twenty-nine are incorporated herein by reference.

31. In its final results, Commerce calculated certain surrogate values using Thai import data that reported import values with no corresponding import quantities. In so doing, Commerce thus included values in its average price calculations without including the

corresponding quantities, thus overstating the average import unit values. Commerce's approach is mathematically unreasonable and its assumption that reported zero import quantities were the result of rounding small quantities down to zero is not supported by substantial evidence.

## COUNT FIVE

32. Paragraphs one through thirteen are incorporated herein by reference.

33. In its final results, Commerce excluded a debt restructuring line-item from the calculation of TUS's U.S. indirect selling expense ratio. When considering a U.S. affiliate that is engaged only in selling activities, it is the Commerce's long-standing practice to treat all of a U.S. affiliate's selling, G&A, and financial expenses and income as related to sales. The decision to exclude debt restructuring line-item from the calculation of TUS's indirect selling expense ratio was an arbitrary departure from long-standing agency practice and is unreasonable.

## COUNT SIX

34. Paragraphs one through thirteen are incorporated herein by reference.

35. In its final results, Commerce double-counted warranty costs twice in Trina's margin calculation: first when Commerce deducted warranty expenses from U.S. price in the calculation of net U.S. price, and again when Commerce included warranty expenses in the calculation of the SG&A portion of normal value. Commerce's methodology for accounting for warranty expenses is unreasonable, resulted in an overstated dumping margin, and is not supported by substantial evidence.

## COUNT SEVEN

36. Paragraphs one through thirteen are incorporated herein by reference.

37.     In its final results, Commerce valued Trina's coated glass factor of production using imports into Thailand under classification 7007.19.90000. Trina had proposed and Commerce should have valued the company's coated glass using 7005.29. 90001.  The classification proposed by Trina covers float glass…other…other…for a glass of a thickness not exceeding 5 mm.  The classification used by Commerce covers safety glass consisting of toughened (tempered) glass…other…other.

Trina described its glass factors as being of float glass that were tempered and provided detailed specifications regarding the glass thickness with all glass less than 5 mm in thickness. So, while the coated glass consumed by Trina was tempered, the 7005.29.90001 classification is more specific to the glass consumed by Trina because the classification is more closely aligned with the thickness of glass consumed by Trina.  The classification Commerce selected used has no limitation on the glass thickness specification and not specific to the coated glass used Trina. Thus, Commerce's valuation of coated glass was not supported by substantial evidence.

## DEMAND FOR JUDGMENT AND PRAYER FOR RELIEF

38.     For the reasons stated above, Plaintiffs respectfully request that the Court:

(a)     enter judgment in Plaintiffs' favor;

(b)     declare that with respect to the issues raised in this Complaint, Commerce's determinations and all related findings and conclusions are unsupported by substantial evidence on the record or are otherwise not in accordance with law;

(c)     remand these matters to Commerce for redetermination consistent with the Court's opinion, including a recalculation of the margin for Trina pursuant to any remands; and

(d)     provide such other relief as the Court deems just and proper.

       Respectfully submitted,

       /s/ Jonathan M. Freed

       Robert G. Gosselink
       Jonathan M. Freed

       **TRADE PACIFIC PLLC**
       660 Pennsylvania Avenue, SE, Suite 401
       Washington, DC  20002
       Tel:  (202) 223-3760
       rgosselink@tradepacificlaw.com

       Counsel for Plaintiffs

August 1, 2017