**UNITED STATES COURT OF INTERNATIONAL TRADE**

_____

CHANGZHOU TRINA SOLAR ENERGY CO. LTD., ET AL.,

    Plaintiffs and Consolidated Plaintiff,

v.

UNITED STATES,

    Defendant,

and

SOLARWORLD AMERICAS, INC. and CHANGZHOU TRINA SOLAR ENERGY CO., LTD.,

    Defendant-Intervenor and Consolidated Defendant-Intervenor.

_____

Before: Claire R. Kelly, Judge

Consol. Court No. 17-00199


**MEMORANDUM IN SUPPORT OF MOTION OF CHANGZHOU TRINA SOLAR ENERGY COMPANY LIMITED, TRINA SOLAR (CHANGZHOU) SCIENCE AND TECHNOLOGY COMPANY LIMITED, AND TRINA SOLAR (U.S.) INC. FOR JUDGMENT UPON THE AGENCY RECORD**

> Robert G. Gosselink
> Jonathan M. Freed
> **TRADE PACIFIC PLLC**
> 660 Pennsylvania Avenue, SE, Suite 401
> Washington, D.C. 20002
> (202) 223-3760
>
> Counsel to Plaintiffs Changzhou Trina Solar Energy Co., Ltd.; Trina Solar (Changzhou) Science and Technology Co., Ltd.; and Trina Solar (U.S.) Inc.

Dated: February 2, 2018

**TABLE OF CONTENTS**

Page

TABLE OF CONTENTS ............................................................................................................. i

TABLE OF AUTHORITIES ....................................................................................................... ii

I.   STATEMENT PURSUANT TO RULE 56.2(c) ............................................................. 1

     A.   The Administrative Determination Under Review ................................................ 1

     B.   Issues Presented ..................................................................................................... 1

     C.   Standard of Review ................................................................................................ 2

II.  STATEMENT OF THE CASE ........................................................................................ 3

III. ARGUMENT ................................................................................................................... 4

     A.   Commerce Should Have Adjusted Trina's Net U.S. Selling Price To Account for
          Export Subsidies Countervailed in the Companion Countervailing Duty Order.... 4

     B.   Commerce Should Not Have Included Import Data in Its Calculation of Surrogate
          Values Where Import Values Were Reported With No Corresponding Import
          Quantities……………………………………………………………………………….9

     C.   Commerce Should Have Included the Debt-Restructuring Line Item in the
          Calculation of TUS's U.S. Indirect Selling Expense Ratio ................................. 12

IV.  CONCLUSION .............................................................................................................. 14

## TABLE OF AUTHORITIES

**Statutes**

19 U.S.C. § 1516a(b)(1)(B)(i) ..................................................................................................2

19 U.S.C. §1677a(c)(1)(C) ............................................................................................3-4, 7-9

**Judicial Decisions**

*Asociacion Columbiana de Exportadores de Flores v. United States*, 6 F. Supp. 2d 865 (1998) ..2

*Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156 (1962) ..............................................2

*Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938) ...............................................................2

*Consolo v. FMC*, 282 U.S. 607 (1966) ............................................................................................2

*Fujitsu General. Ltd. v. United States*, 88 F.3d 1034 (Fed. Cir. 1996) ..........................................2

*Jinko Solar Co., Ltd. et al, v. United States*, 229 F.Supp.3d 1333, 1359 (CIT May 2017) .... 5, 7-9

*Orange Juice from Brazil*, 74 Fed. Reg. 40167 (August 11, 2009) ..............................................12

*NTN Bearing Corp. v. United States*, 74 F.3d 1204 (Fed. Cir. 1995) .............................................2

*Nucor Corp. v. United States*, 32 CIT 1380, 594 F. Supp. 2d 1320 (2008) ....................................2

*PAM, S.p.A. v. United States*, 582 F.3d 1336 (Fed. Cir. 2009) ......................................................2

*Rhone-Poulenc, Inc. United States*, 20 CIT 573, 927 F. Supp. 451 (1996) ....................................2

*Solarworld Americas, Inc. v. United States*, 2017 WL 4844276, CIT Slip Op. 17-143, (Oct 17, 2017) ................................................................................................................................................9

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951) .......................................................2

*Zenith Electronics v. United States*, 77 F.3d 426, 431 (Fed. Cir. 1996) .......................................12

**Administrative Determinations**

*Certain Crystalline Silicon Photovoltaic Products From the People's Republic of China: Preliminary Results of Antidumping Duty Administrative Review and Preliminary Determination of No Shipments; 2014–2016*, 82 Fed. Reg. 12,793 (Dep't Commerce, Mar. 7, 2017) .......... 3-4, 7

*Certain Crystalline Silicon Photovoltaic Products From the People's Republic of China: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2014-2016*, 82 Fed. Reg. 32.170 (Dep't Commerce, July 12, 2017) ................................... *passim*

*Certain Hot-Rolled Carbon Steel Flat Products from Thailand*, 66 Fed. Reg. 49622 (Sept. 28, 2001) ...........................................................................................................................*12*

*Countervailing Duty Investigation of Certain Crystalline Silicon Photovoltaic Products From the People's Republic of China: Final Affirmative Countervailing Duty Determination*, 79 Fed. Reg. 76962 (Dec. 23, 2014) ..................................................................................................... 5-7

*Certain Crystalline Silicon Photovoltaic Products From the People's Republic of China: Final Determination of Sales at Less Than Fair Value*, 79 Fed. Reg. 76970 (Dec. 23, 2014) ........ 6, 8-9

*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2012–2013*, 80 Fed. Reg. 40,998 (July 14, 2015) ......................8

*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2013–2014*, 81 Fed. Reg. 39905 (Dep't Commerce, June 20, 2016) ...................................................................................... 9-11

*Final Determination in the Less-Than-Fair-Value Investigation of Coated Free Sheet Paper from the People's Republic of China*, 72 Fed. Reg. 60632, (Dep't Commerce, Oct. 17, 2007) ......... 4-5

*Melamine Institutional Dinnerware Products from the People's Republic of China*, 62 Fed. Reg. 1708, 1710 (Jan. 13, 1997) ...........................................................................................................*12*

*Sweaters Wholly or in Chief Weight of Man-Made Fiber from the Republic of Korea*, 55 Fed. Reg. 32659 (August 19, 1990) ..................................................................................................*12*

# MEMORANDUM IN SUPPORT OF MOTION FOR
# JUDGMENT UPON THE AGENCY RECORD

## I.      STATEMENT PURSUANT TO RULE 56.2(c)

Plaintiffs, Changzhou Trina Solar Energy Co., Ltd.; Trina Solar (Changzhou) Science and Technology Co., Ltd.; and Trina Solar (U.S.) Inc., (hereinafter Plaintiffs or "Trina"), submit this brief in support of their Motion for Judgment upon the Agency Record pursuant to USCIT Rule 56.2.

### A.      The Administrative Determination Under Review

This action is an appeal from the U.S. Commerce Department's final results of administrative review in *Certain Crystalline Silicon Photovoltaic Products From the People's Republic of China: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2014-2016*, 82 Fed. Reg. 32.170 (Dep't Commerce, July 12, 2017) ("*Final Results*"), PR 266, and accompanying Issues and Decision Memorandum for Certain Crystalline Silicon Photovoltaic Products From the People's Republic of China (July 5, 2017), available at https://enforcement.trade.gov/frn/summary/prc/2017-14611-1.pdf ("*Decision Memorandum*"), PR 259.

### B.      Issues Presented

Plaintiffs seek judgment on the agency record with respect to three issues.

1.      Whether Commerce's failure to adjust the net U.S. selling price to account for export subsidies countervailed under the companion countervailing duty order was supported by substantial evidence or otherwise in accordance with law.

2.      Whether Commerce's calculation of surrogate values including import values that had no corresponding import quantities was supported by substantial evidence.

3.      Whether Commerce's exclusion of a debt restructuring line-item from the calculation of the U.S. indirect selling expense ratio for Trina Solar (U.S.) Inc., ("TUS") was supported by substantial evidence.

17-00199 – Trina's 56.2 Brief

### C. Standard of Review

When evaluating factual determinations contained in the final results of an antidumping duty administrative review, the Court must sustain Commerce's final results, unless they are "unsupported by substantial evidence on the record or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i); *see also Fujitsu General. Ltd. v. United States*, 88 F.3d 1034, 1038 (Fed. Cir. 1996). Substantial evidence is "more than a mere scintilla," and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolo v. FMC*, 282 U.S. 607, 619-20 (1966) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *PAM, S.p.A. v. United States*, 582 F.3d 1336, 1339 (Fed. Cir. 2009). In order for a determination to satisfy this standard, "{t}here must be a rational connection between the facts found and the choice made." *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962); *Nucor Corp. v. United States*, 32 CIT 1380, 594 F. Supp. 2d 1320, 1331-32 (2008). Additionally, "{t}he substantiality of evidence must take into account whatever in the record fairly detracts from its weight," including "contradictory evidence or evidence from which conflicting inferences could be drawn." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487-488 (1951).

This Court has found Commerce's determinations unlawful "where Commerce has relied on inadequate facts or reasoning, or failed to provide an adequate basis for its conclusions." *Rhone-Poulenc, Inc. United States*, 20 CIT 573, 575, 927 F. Supp. 451, 454 (1996); see also *Asociacion Columbiana de Exportadores de Flores v. United States*, 6 F. Supp. 2d 865, 880 (1998). Even where Commerce has acted in conformity with its statutory and regulatory obligations, the resulting dumping margin must be examined for its accuracy and fairness. *See NTN Bearing Corp. v. United States*, 74 F.3d 1204, 1208 (Fed. Cir. 1995).

**II.    STATEMENT OF THE CASE**

Pursuant to a request from Trina, Commerce initiated an administrative review of Trina's U.S. sales for the July 31, 2014, through January 31, 2016, period of review ("POR").[1]  On May 26, 2016, Commerce issued the antidumping questionnaire and the double remedies questionnaire to the sole mandatory respondent, Trina. Trina fully participated in the proceeding responding to the initial antidumping duty questionnaire and five supplemental questionnaires.

On March 7, 2017, Commerce published its preliminary results of review, in which it calculated a preliminary margin for Trina of 14.70 percent.  *Certain Crystalline Silicon Photovoltaic Products From the People's Republic of China: Preliminary Results of Antidumping Duty Administrative Review and Preliminary Determination of No Shipments; 2014–2016*, 82 Fed. Reg. 12,793 (Dep't Commerce, Mar. 7, 2017) ("*Preliminary Results*"), PR 265.  Thereafter, Trina submitted a case brief to Commerce arguing, among other points, that Commerce should have made an export subsidy adjustment to Trina's U.S. selling prices in accordance with 19 U.S.C. §1677a(c)(1)(C).[2]  Trina also maintained that Commerce's calculation of surrogate in which Commerce used import values that had no corresponding import quantities resulted in distorted values.[3]  In response to Petitioner's Case brief, Trina filed a rebuttal brief contesting any adjustment to TUS's indirect selling expense ratio for a debt-restructuring line item.[4]

---

[1] *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 81 Fed. Reg. 20324 (Apr. 7, 2016).

[2] Trina's Case Brief, pages 4-6, (Apr. 11, 2017), PR 244, Barcode 3562234-01.

[3] *Id.*, at 16-19.

[4] Trina Rebuttal Brief, pages 19-22, (Apr. 20, 2017), PR 250, Bar Code 3565047-01).

On July 12, 2017, Commerce published the final results of the administrative review in which it calculated a final margin to Trina of 9.61 percent.[5] As it had in the *Preliminary Results*, Commerce in the *Final Results* continued to deny Trina the export subsidy adjustment required by the statute. Commerce also continued to calculate the surrogate prices it used to value dozens of of Trina's factors of production using import values with no corresponding import quantities. Finally, Commerce changed its preliminary calculation of TUS's indirect selling expenses by excluding from the calculation a financial statement line-item for debt restructuring, and this appeal ensued.

### III.   ARGUMENT

### A.   Commerce Should Have Adjusted Trina's Net U.S. Selling Prices to Account for Export Subsidies Countervailed in the Companion Countervailing Duty Order

Where goods are subject to both antidumping duties and countervailing duties, the statute instructs that, "the price used to establish export price and constructed export price **shall be**—(1) increased by…..(C) the amount of any countervailing duty imposed on the subject merchandise under part I of this subtitle to offset an export subsidy,…"[6]

Commerce long has held that the purpose of adding countervailed export subsidies to U.S. prices is to prevent AD duties from constituting a second remedy for export subsidies. *See e.g., Final Determination in the Less-Than-Fair-Value Investigation of Coated Free Sheet Paper from the People's Republic of China*, 72 Fed. Reg. 60632, (Oct. 17, 2007), and accompanying Issues and Decision Memorandum, Comment 2 ("*CFS Paper*"). That is, it has been Commerce's long-standing practice in administrative reviews to offset existing export subsidy assessment

---

[5] *Final Results*, 82 Fed. Reg. 32170, 32171.

[6] *See* 19 U.S.C. §1677a(c)(1)(C).

rates against the antidumping duty margin calculated because *not* to do so would result in the application of antidumping duties on reduced export prices that result from the same export subsidy that has been remedied by the countervailing duty rate.[7] This is not just sound logic; it is the law. In *CFS Paper* and in other cases, the Department repeatedly has acknowledged that the export subsidy offset is statutorily mandated, stating, "the statute plainly requires the Department to add the full amount of CVDs imposed to offset export subsidies to the U.S. price." *Id.*

In the original countervailing duty investigation of solar products, Commerce countervailed the Ex-Im Buyer's Credit[8] program at a rate of 10.54 percent for Trina.[9] Although Commerce preliminarily determined that Trina did not use the Ex-Im Buyer's Credit program, Commerce assigned adverse facts available ("AFA") for this program in the *Final Results* because the Ex-Im Bank of China did not permit Commerce verifiers full access to its records and data systems to verify non-use of the program.[10] In explaining its rationale for countervailing the Ex-Im Buyer's Credit program, Commerce emphasized that "the Export-Import Bank of China (Ex-Im Bank) provides loans at preferential rates for the purchase of

---

[7] *Jinko Solar Co., Ltd. et al, v. United States*, 229 F.Supp.3d 1333, 1359 (CIT May 2017).

[8] The program has been referred to as the Export Buyer's Credit Program, the Ex-Im Bank Buyer's Credit Program, the Ex-Im Bank Buyer's Credit Program, and more generally as Export Credit Subsidy. Plaintiff refers to the program throughout this memorandum to the program as the Ex-Im Buyer's Credit program.

[9] *See Countervailing Duty Investigation of Certain Crystalline Silicon Photovoltaic Products From the People's Republic of China: Final Affirmative Countervailing Duty Determination*, 79 Fed. Reg. 76962 (Dec. 23, 2014) ("*Solar Products CVD Final*"), and accompanying Issues and Decision Memorandum, page 30, available at https://enforcement.trade.gov/frn/summary/prc/2014-30071-1.pdf, *see also*, Trina Factual Information Submission, Exhibit L, Amended Final Determination Analysis Memorandum for Trina (Jan. 30, 2017), PR 207, Barcode 3539773-03.

[10] *Solar Products CVD Final*, Issues and Decision Memorandum, pages 9-11.

5

**exported goods** from the PRC."[11]   That is, the program was directly related to exports.

In the corresponding original antidumping duty investigation of solar products from China, Commerce considered whether to offset the antidumping duty deposit rate for export subsidies, and specifically the "EX-IM Buyer's Credit" subsidy program.[12]  In that case, Petitioner argued that Commerce should not offset antidumping deposit rates based on the export subsidy rates determined in the companion solar products CVD investigation because the countervailing duty determined for the Ex-Im Buyer's Credit subsidy program was based on AFA.[13]  Commerce rejected Petitioner's argument stating,

> Section 772(c)(1)(C) of the Act directs the Department to increase EP or CEP by the amount of the countervailing duty "imposed" on the subject merchandise "to offset an **export subsidy**." The basic theory underlying this provision is that in parallel AD and CVD investigations, if the Department finds that a respondent received the benefits of an export subsidy program, it is presumed the subsidy contributed to lower-priced sales of subject merchandise in the United States market. Thus, the subsidy and dumping are presumed to be related, and the imposition of duties against both would in effect be "double-application" – or imposing two duties against the same situation.

*Id.*, Issues and Decision Memorandum, Comment 3, page 38 (*emphasis added*).

Thus, in the *Solar Products LTFV Final*, Commerce again specifically acknowledged that the Ex-Im Buyer's Credit program countervailed in the companion CVD investigation was an export subsidy for which the statute required an adjustment in calculation of the net U.S. price for purposes of measuring dumping.

---

[11] *Solar Products CVD Final*, Issues and Decision Memorandum, at page 30, (*emphasis added*).

[12] *Certain Crystalline Silicon Photovoltaic Products From the People's Republic of China: Final Determination of Sales at Less Than Fair Value*, 79 Fed. Reg. 76970 (Dec. 23, 2014), Issues and Decision Memorandum, Comment 3 ("*Solar Products LTFV Final*")

[13] Id., Issues and Decision Memorandum, Comment 3, page 37.

On appeal, Commerce defended its decision to adjust the antidumping duty cash deposit rate for the respondents with the AFA export subsidy rate determined in *Solar Products CVD Final*, and this Court sustained agency's decision.[14] Commerce's determination in *Solar Products CVD Final* and the Court's decision in *Jinko Solar Co., Ltd. et al, v. United States* both established that the countervailing duty from the Ex-Im Buyer's Credit program was appropriately offset in the antidumping duty case as an export subsidy regardless of whether the countervailing duty rate determined was based on adverse facts available or a rate calculated from respondent data.

However, in the *Preliminary Results* of the first antidumping duty administrative review that is the basis of this appeal,[15] in an abrupt turnaround, Commerce did not adjust Trina's net U.S. selling price in accordance with 19 U.S.C. §1677a(c)(1)(C).[16] That is, while Commerce appropriately adjusted Trina's net U.S. selling prices for domestic subsidies determined in the companion CVD case, Commerce – without explanation – did not make the necessary offsetting price increase adjustment for any export subsidies. In its agency case brief, Trina brought the oversight to Commerce's attention.[17] But in the *Final Results*, Commerce inexplicably asserted – in stark contrast to its definitive determination in the original less-than-fair-value investigation – that it "did not make a determination in the CVD investigation of certain solar products from

---

[14] *Jinko Solar Co., Ltd. et al, v. United States*, 229 F.Supp.3d 1333, 1357-1361 (CIT May 2017), Slip Op. 17–62, at 39-42.

[15] *Preliminary Results*, 82 Fed. Reg. 12793, March 7, 2017.

[16] Preliminary Analysis Memorandum for Trina, Computer Programs – Attachment 1 Log, lines 1051-1162, (March 1, 2017), CR 222, Barcode 3547714-02.

[17] Trina's Case Brief, pages 4-6, (Apr. 11, 2017), PR 244, Barcode 3562234-01.

7

the PRC that the Export Buyer's Credits Program was an export subsidy"[18] and that it therefore was not appropriate to adjust Trina's U.S. selling prices in accordance with 19 U.S.C. §1677a(c)(1)(C).

Commerce's statement in the *Final Results* that the Ex-Im Buyer's Credit program was not countervailed as an export subsidy simply cannot be reconciled with the agency's prior determinations or this Court's decision in *Jinko Solar Co., Ltd. et al, v. United States*. The Ex-Im Buyer's Credit AFA rate at issue in *Solar Products LTFV Final* is the exact same rate upon which Commerce should have adjusted Trina's constructed export price (CEP) prices in the first administrative review in accordance with the statute, Court precedent, and agency practice.

In administrative reviews, the "Department's practice is to rely on the export subsidy rates found in the most recently completed segment of the companion CVD proceeding (i.e., the most recently published CVD final determination or final results of administrative review)" to adjust the U.S. export price (EP) or CEP for export subsidies in accordance with 19 U.S.C. §1677a(c)(1)(C).[19] For the administrative review underlying this appeal, the countervailing duty rate determined in the original countervailing duty investigation of solar products is the rate that should have been used to adjust Trina's U.S. selling prices in the dumping calculation. Thus, the appropriate export subsidy adjustment to the net price calculation is the same 10.54 percent rate at issue in *Solar Products LTFV Final* and *Jinko Solar Co., Ltd. et al, v. United States*.[20]

---

[18] *Decision Memorandum*, Comment 2, page 9.

[19] *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2012–2013*, 80 Fed. Reg. 40,998 (July 14, 2015), Issues and Decision Memorandum, Comment 28.

[20] *See also,* Trina Factual Information Submission, Exhibit L, Amended Final Determination Analysis Memorandum for Trina (Jan. 30, 2017), PR 207, Barcode 3539773-03.

8

Commerce's position in the *Final Results* is arbitrary, inconsistent with its specific prior determinations and the holding of this Court, and not based on any reasonable explanation for departure from practice. Either Commerce redetermined its prior findings and conclusions in *Solar Products LTFV Final* without explanation or it just ignored them. In either case, Commerce's conclusion that it did not find the Ex-Im Buyer's Credit program to be an export subsidy program is plainly contradicted by *Solar Products LTFV Final* and the Court's affirmation in *Jinko Solar Co., Ltd. et al, v. United States*. Trina respectfully requests that the Court remand the *Final Results* to Commerce with instructions to comply with 19 U.S.C. §1677a(c)(1)(C) and to adjust U.S. prices for the export subsidy rate of 10.54 percent.

    **B.**    **Commerce Should Not Have Included Import Data in Its Calculation of Surrogate Values Where Import Values Were Reported With No Corresponding Import Quantities**

Plaintiffs challenge again Commerce's determination to include import data for which no import quantities existed in the calculation of surrogate values based on import data. Trina raised the same issue in the civil action contesting the final results of the second administrative review of the antidumping duty order covering crystalline silicon photovoltaic cells, whether or not assembled into modules, from China.[21] In *Solarworld Americas, Inc. v. United States*, the Court remanded the issue back to Commerce concluding,

> There may be a reasonable explanation as to why the zero-quantity imports have values that are not within range of low-quantity inputs elsewhere in the database. But Commerce has not provided such an explanation here. Without further explanation, Commerce's assumption that the zero quantities were the result of rounding is not reasonable.

*Solarworld Americas, Inc.*, CIT Slip-Op 17-143, page 34.

---

[21] *See Solarworld Americas, Inc. v. United States*, 2017 WL 4844276, CIT Slip Op. 17-143, (Oct 17, 2017), contesting, *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the PRC: Final Results of Antidumping Duty Administrative Review*, 81 Fed. Reg. 39,905 (Dep't Commerce Jun. 20, 2016) ("*Solar Cells AR2*").

In the *Final Results*, Commerce relied on the same conclusion it reached in *Solar Cells AR2*: that zero quantity imports are attributable to rounding small import quantities to zero.[22] But like its decision in *Solar Cells AR2,* Commerce's decision did not provide any explanation or reference to facts to support its assumption.

In the *Final Results*, Commerce further explained its decision **not** to exclude import values with zero import quantities from its surrogate value calculations with its conclusion that "there are no imports in the data with a zero value."[23] But Commerce's conclusions are not based on substantial evidence. There is no information on the record showing that shipments of "small quantities" or even just shipments of only less than 0.49 kilograms were rounded down to zero. In fact, it is anyone's guess as to whether the zero quantities represent mistakes, omissions, rounding down of quantities, or something else entirely. At a minimum, it is reasonable to conclude that importations cannot occur with value but no quantity – even Commerce has not gone so far as to make that assumption – but any other conclusion is speculation, and Commerce determinations may not be based on conjecture. Commerce claimed that "if the zero quantities were the result of errors, we would expect such errors to also occur with respect to the reported *value* in at least some instances,"[24] but Commerce provides no support for this assumption, either.

Trina demonstrated that instances of observations being expressed with zero quantity were far more prevalent than other low quantity observations and, thus, were likely not to be attributable to rounding.[25] But rather than identify evidence to confront the evidence that Trina

---

[22] *Decision Memorandum*, Comment 3, page 12.

[23] *Id.*

[24] *Id.*

[25] Trina's Case Brief, pages 18-19, (Apr. 11, 2017), PR 244, Barcode 3562234-01.

10

presented, Commerce simply stated, "we do not believe this line of reasoning demonstrates that rounding cannot explain the zero quantity imports."[26]

As in *Solar Cells AR2*, the record in this review cannot support a determination that all, or even most, of the zero quantity imports are attributable to rounding.  Therefore, Commerce should have excluded all instances of zero import quantities from the surrogate value calculations.  Even if some of the instances of zero quantity imports are attributable to rounding, excluding those data from the surrogate value calculation would not distort the resulting average calculations because the impact of excluding zero quantities attributable to rounding is negligible and therefore does not distort the overall AUV calculated.  In contrast, **including** reported zero quantities and corresponding positive values when the import quantities are not reported for some other (unknown) reason can have a significant impact on the resulting surrogate values calculations.  Therefore, when Commerce calculated surrogate values using import statistics, it should have excluded all instances of zero quantity imports with corresponding values from its calculations.  Commerce's failure to do so resulted in the import data-generated surrogate values used by Commerce to value factors of production not being based on substantial evidence.

      C.      **Commerce Should Have Included the Debt-Restructuring Line Item in the Calculation of TUS's U.S. Indirect Selling Expense Ratio**

Commerce's decision to exclude TUS's debt restructuring income as an offset to its indirect selling expenses (in the calculation of TUS's indirect selling expense ratio) was arbitrary and contrary to established agency practice.  When considering a U.S. affiliate that is engaged only in selling activities, it is Commerce's long-standing practice to treat all of its selling, G&A, and financial expenses and income as related to sales.

---

[26] *Decision Memorandum*, Comment 3, page 12.

For more than 25 years, Commerce consistently has held that all activities of an entity that functions solely as a selling entity are related to sales. In *Certain Hot-Rolled Carbon Steel Flat Products from Thailand*, 66 Fed. Reg. 49622 (Sept. 28, 2001), the Department explained that "because this affiliate ... is a selling entity, it is appropriate to include G&A expenses incurred by the entity in the selling expense calculation."[27] Accordingly, because Commerce includes all G&A expenses, as well as interest income and expenses, of a U.S. sale's arm in the calculation of U.S. indirect selling expenses, all of TUS's non-direct selling expenses and non-sales income related to company operations – including interest income and debt restructuring income – are appropriately treated as indirect selling expenses. This practice does not reflect a finding that all expenses and income for all U.S. companies are invariably indirect selling expenses. Instead, it reflects the common-sense proposition that the expenses for administering a sales operation are necessarily sales administration costs, which the Department routinely classifies as indirect selling expenses in any market.[28]

Indirect selling expenses are expenses which neither result from, nor bear a direct relationship to, a particular sale and because they are not directly related to a particular sale, indirect selling expenses "do not vary with the quantity sold."[29] Because such expenses cannot

---

[27] *See also Melamine Institutional Dinnerware Products from the People's Republic of China*, 62 Fed. Reg. 1708, 1710 (Jan. 13, 1997) (Comment 18) (all expenses not treated as direct selling or movement expenses should be included in indirect selling expenses); *Sweaters Wholly or in Chief Weight of Man-Made Fiber from the Republic of Korea*, 55 Fed. Reg. 32659 (August 19, 1990).

[28] *See, e.g., Orange Juice from Brazil*, 74 Fed. Reg. 40167 (August 11, 2009) (Issues and Decision Memorandum, Comment 4, available at https://enforcement.trade.gov/frn/summary/BRAZIL/E9-19223-1.pdf) (wherein, Commerce recalculated the respondent's "indirect selling expenses to include financing expenses, offset by interest income").

[29] *Zenith Electronics v. United States*, 77 F.3d 426, 431 (Fed. Cir. 1996).

be tied to a particular sale, indirect selling expenses in general are allocated to all sales in a particular market. In the *Final Results*, Commerce agreed with Trina's basic proposition that debt-restructuring income should be considered as an offset to indirect selling expenses.[30] But, Commerce concluded that it was not possible to determine the current portion of the debt-restructuring income covering only the period of review.[31] Commerce thus disallowed any portion of the debt-restructuring income as an offset indirect selling expenses. As an initial matter, Commerce's conclusion that the debt-restructuring line-item was not related to the current period was based on speculation and thus lacks a basis in substantial evidence. Moreover, having agreed that it is appropriate to offset indirect selling expenses with debt-restructuring income, Commerce's decision to disallow the offset entirely was arbitrary and unreasonable.

In its first supplemental questionnaire, Commerce asked Trina about the debt-restructuring income line-item, but never inquired to determine the extent to which the debt-restructuring was properly attributable to the current period. Instead, Commerce requested that Trina respond to the following,

> If you believe it is correct to reduce reported indirect selling costs by the costs of debt restructuring please state why this is the case. However, in doing so, please address the Department's concern that the reported adjustment is indirect selling costs and the costs of debt restricting do not appear to be related to indirect selling costs.

Trina Supplemental Response, Aug. 29, 2016, PR 160, Bar Code 3502018-02.

After receiving Trina's response, Commerce did not inquire again regarding the debt-restructuring income line item; nor did petitioners comment on the subject again until their case

---

[30] *Decision Memorandum*, Comment 9, page 27.

[31] *Id.*

13

brief. Thus, neither Commerce nor any other interested party raised any concern that the debt-restructuring income line item on Trina US's income statement was not properly attributable to the current period. The only facts on the record as to whether the debt-restructuring line-item related to the current period is that the line-item was listed on TUS's income statement for the current period. Thus, Commerce's concern, expressed for the first time in the *Final Results*, that the income might not relate entirely to the current period is purely speculative and should not be sustained.

## IV.   CONCLUSION

For the reasons set forth above, the *Final Results* issued by Commerce in the administrative review involving Certain Crystalline Silicon Photovoltaic Products From the People's Republic of China are not supported by substantial evidence. Plaintiffs respectfully request that this Court reverse and remand this case to Commerce with instructions to recalculate Trina's margin after making changes necessary (1) to adjust the U.S. selling prices for countervailed export subsidies; (2) to calculate surrogate values that do not rely on import values that have no corresponding import quantities; and (3) to include the debt-restructuring line item in TUS's income statement in the calculation of indirect selling expenses.

Respectfully submitted,

/s/ Robert G. Gosselink
Robert G. Gosselink
Jonathan M. Freed

**TRADE PACIFIC PLLC**
660 Pennsylvania Avenue, SE, Suite 401
Washington, D.C.  20003
(202) 223-3760

Counsel to Plaintiffs Changzhou Trina Solar Energy
Co., Ltd., and Trina Solar (Changzhou) Science
and Technology Co., Ltd.

Dated:  February 2, 2018