## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **CHANGZHOU TRINA SOLAR ENERGY CO., LTD.,** *et al.*, <br><br> **Plaintiff,** <br><br> **SOLARWORLD AMERICAS, INC.,** <br><br>     **Consolidated Plaintiff,** <br><br> **v.** <br><br> **UNITED STATES,** <br><br>     **Defendant,** <br><br>     **and** <br><br> **SOLARWORLD AMERICAS, INC.,** *et al.*, <br><br>     **Defendants-Intervenors.** | Consol. Ct. No. 17-00199 <br><br> Before: Hon. Claire R. Kelly, <br>    Judge <br><br> **<u>NON-CONFIDENTIAL VERSION</u>** <br><br> **Business Proprietary Information removed from pages 7, 16** |

## <u>RESPONSE BRIEF OF DEFENDANT-INTERVENOR SOLARWORLD AMERICAS, INC.</u>

Timothy C. Brightbill, Esq.
Laura El-Sabaawi, Esq.

**WILEY REIN LLP**
1776 K Street, NW
Washington, DC 20006
(202) 719-7000

*Counsel for SolarWorld Americas, Inc.*

June 8, 2018

TABLE OF CONTENTS

Page

I.     INTRODUCTION ................................................................................................. 1
II.    RULE 56.2 STATEMENT ..................................................................................... 1
       A.    Administrative Decision Under Review .................................................. 1
       B.    Statement of Issue Presented and Summary of Arguments ..................... 2
III.   STATEMENT OF FACTS ....................................................................................... 4
       A.    Adjustment to Trina's Net U.S. Selling Prices to Account for Subsidies
             Countervailed in Companion Countervailing Duty Investigation ........... 4
       B.    Import Data with Zero Quantities in the Surrogate Value Calculations .... 6
       C.    Debt Restructuring Income in the Calculation of Trina's U.S. Indirect Selling
             Expenses ................................................................................................ 7
IV.    STANDARD OF REVIEW ...................................................................................... 8
V.     ARGUMENT ....................................................................................................... 9
       A.    Commerce Properly Determined Not to Offset Trina's U.S. Prices to Account
             for the Countervailed Ex-Im Bank Buyer's Credit Program ................... 9
       B.    Commerce's Inclusion in the Surrogate Value Calculation of Import Values
             with Import Quantities of Zero Was Supported by Substantial Evidence and
             Otherwise in Accordance with Law .................................................... 11
       C.    Commerce Appropriately Disallowed Trina a Debt Restructuring Income
             Offset to Its U.S. Indirect Selling Expenses ........................................ 14
VI.    CONCLUSION .................................................................................................. 17

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*China Nat'l Mach. Imp. & Exp. Corp. v. United States,*
  27 Ct. Int'l Trade 255 (2003) ..................................................................................................13

*Chevron U.S.A., Inc. v. Nat. Res. Defense Council, Inc.,*
  467 U.S. 837 (1984) ...............................................................................................................9

*Consolo v. Fed. Mar. Comm'n,*
  383 U.S. 607 (1966) ...............................................................................................................8

*Daewoo Elecs. Co. v. Int'l Union of Electronic Elec., Tech., Salaried, & Mach.*
  *Workers,* 6 F.3d 1511 (Fed. Cir. 1993)...................................................................................13

*Hercules, Inc. v. United States,*
  11 Ct. Int'l Trade 710 (1987)..................................................................................................13

*Rhone Poulenc, Inc., v. United States,*
  899 F.2d 1185 (Fed. Cir. 1990) .............................................................................................12

*Torrington Co. v. United States,*
  19 Ct. Int'l Trade 403 (1995) ...................................................................................................8

*Universal Camera Corp. v. N.L.R.B.,*
  340 U.S. 474 (1951) ...............................................................................................................8

*Wheatland Tube Co. v. United States,*
  495 F.3d 1355 (Fed. Cir. 2007) ..............................................................................................9

### FEDERAL STATUTES

19 U.S.C. § 1516a(b)(l)(B)(i) ........................................................................................................9

19 U.S.C. § 1677(5A)(B) .............................................................................................................11

### FEDERAL REGULATIONS

19 C.F.R. § 351.401(g)(2) ............................................................................................................16

ii

**ADMINISTRATIVE MATERIALS**

*Certain Crystalline Silicon Photovoltaic Products from the People's Republic of China*, 82 Fed. Reg. 12,793 (Dep't Commerce Mar. 7, 2017) .................................................4

*Certain Crystalline Silicon Photovoltaic Products from the People's Republic of China*, 80 Fed. Reg. 8,592 (Dep't Commerce Feb. 18, 2015) ...............................................10

*Certain Preserved Mushrooms From India*, 68 Fed. Reg. 41,303 (Dep't Commerce July 11, 2003) .........................................................................................15

*Certain Cut-to-length Carbon Steel Plate From Mexico*, 68 Fed. Reg. 13,260 (Dep't Commerce Mar. 19, 2003) .........................................................................15

*Crystalline Silicon Photovoltaic Products from the People's Republic of China*, 82 Fed. Reg. 32,170 (Dep't Commerce July 12, 2017) ...........................................1

*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China*, 81 Fed. Reg. 39,905 (Dep't Commerce June 20, 2016) .................................................................................................13-14

*Countervailing Duty Investigation of Certain Crystalline Silicon Photovoltaic Products from the People's Republic of China*, 79 Fed. Reg. 76,962 (Dep't Commerce Dec. 23, 2014) .......................................................................................10

*Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 81 Fed. Reg. 20,324 (Dep't Commerce Apr. 7, 2016) ....................................................4

*Light-Walled Rectangular Pipe and Tube From Mexico*, 69 Fed. Reg. 53,677 (Dep't Commerce Sept. 2, 2004) .........................................................................15

*Structural Steel Beams From South Korea*, 65 Fed. Reg. 41,437 (Dep't Commerce July 5, 2000) .......................................................................................14-15

Consol. Ct. No. 17-00199                          **NON-CONFIDENTIAL VERSION**

## I.      INTRODUCTION

Pursuant to Rule 56.2 of the U.S. Court of International Trade, SolarWorld Americas,

Inc. ("SolarWorld") submits this brief in response to the motion for judgment on the agency

record and accompanying brief in support filed by Plaintiffs Changzhou Trina Solar Energy Co.,

Ltd., Trina Solar (Changzhou) Science and Technology Co., Ltd. and Trina Solar (U.S.) Inc.

(collectively, "Trina").   Mem. in Supp. of Mot. of Changzhou Trina Solar Energy Company

Limited, Trina Solar (Changzhou) Science and Technology Company Limited, and Trina Solar

(U.S.) Inc. for J. upon the Agency Rec. (Feb. 2, 2018), ECF No. 29 ("Trina 56.2 Br.").

## II.     RULE 56.2 STATEMENT

### A.     Administrative Decision Under Review

The administrative determination challenged in this case is the U.S. Department of

Commerce's ("Commerce") final results in the first administrative review of the antidumping

duty order on *Crystalline Silicon Photovoltaic Products from the People's Republic of China*.

The final results were signed by Commerce on July 5, 2017 and published in the *Federal*

*Register* on July 12, 2017.  *Crystalline Silicon Photovoltaic Products from the People's Republic*

*of China*, 82 Fed. Reg. 32,170 (Dep't Commerce July 12, 2017) (final results of antidumping

duty admin. review and final deter. of no shipments; 2014-2016), P.R. 266 ("*Final Results*").

*See also* Issues and Decision Memorandum accompanying *Final Results*, P.R. 259[1] ("I&D

Memo").

---

[1]      Documents contained in the administrative record are identified by the name and date of the documents,
followed by the confidential ("C.R.") and public ("P.R.") record numbers assigned to these documents in the
respective administrative record indices filed with the Court on March 14, 2016. See Letter from James Henry
Ahrens II, Att'y, Office of the Chief Counsel for Trade Enf't and Compliance, to Mario Toscano, Clerk of the Ct.,
U.S. Ct. of Int'l Trade, re: *Changzhou Trina Solar Energy Co. v. United States, Court No. 17-00199* (Sept. 20,
2017), ECF No. 19.

**NON-CONFIDENTIAL VERSION**

**B.**     **Statement of Issue Presented and Summary of Arguments**

    **1.**     **Whether Commerce's determination not to adjust Trina's net U.S. selling price to account for certain subsidies countervailed in a companion countervailing duty investigation was supported by substantial evidence and otherwise in accordance with law?**

Yes.   Commerce acted reasonably and consistent with the statute in declining to offset Trina's U.S. prices to account for the China Ex-Im Bank Buyer's Credit Program subsidy, which was countervailed in the countervailing duty investigation filed as a companion to the original antidumping duty investigation in this proceeding.   The relevant subsidy program was countervailed as a result of the application of adverse facts available, due to the Government of China's failure to provide key information regarding the operation of the program and otherwise to cooperate with the agency's investigation.   Given this failure, Commerce did not have sufficient information to make, and did not make, a finding that the China Ex-Im Bank Buyer's Credit Program was an "export subsidy" as defined in the statute in the countervailing duty investigation.   As such, Commerce properly declined to grant Trina an "export subsidy" offset in this antidumping duty administrative review.

    **2.**     **Whether Commerce's inclusion in its surrogate value calculation of import values with import quantities of zero was supported by substantial evidence and otherwise in accordance with law?**

Yes.   Commerce's inclusion in its **surrogate value** calculation of import values with import quantities of zero was supported by substantial evidence and otherwise in accordance with law.   Commerce analyzed this issue in reaching its final results and found no basis in the record to conclude that the relevant entries were unreliable or incorrect.   Specifically, Commerce reasonably found that the reported import data with zero quantities were attributable to rounding small quantities down to zero.

**NON-CONFIDENTIAL VERSION**

While Plaintiffs note that a similar issue was remanded in an appeal of the second administrative review of the *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules, from the People's Republic of China* ("*Solar I*") antidumping duty order,[2] the agency provided additional explanation and response to Trina's argument on this issue in the underlying review.   Thus, Commerce's determination to include such import values in the surrogate value calculations was well-reasoned and consistent with both its discretion to administer the antidumping duty laws and its obligation to calculate dumping margins as accurately as possible.

> **3.   Whether Commerce's determination to disallow Trina a debt restructuring income offset to its U.S. indirect selling expenses was supported by substantial evidence and otherwise consistent with law?**

Yes.   Contrary to Trina's arguments, Commerce's well-established practice is to allow an offset only for the portion of the debt restructuring gain attributable to the current period of review.   In the underlying review, it was Trina's responsibility to demonstrate that its debt-restructuring line-item was related to the current period, and Trina failed to meet that burden.   As a result of Trina's failure to provide adequate information regarding its debt restructuring income, Commerce was unable to determine the current portion of the gain, in accordance with agency practice.   As such, it was fully appropriate for the agency to disallow Trina's debt restructuring incoming offset.

---

[2]     SolarWorld notes that the Court recently sustained Commerce's determination to include import data with reported quantities of zero in the surrogate value calculations in the *Solar I* second antidumping duty administrative review appeal.   *SolarWorld Americas v. United States*, Consol. Ct.No. 16-00134, Slip Op. 18-53 (May 18, 2018).

### III.   STATEMENT OF FACTS

Commerce initiated the first administrative review of the antidumping duty order on Crystalline Silicon Photovoltaic Products from the People's Republic of China on April 7, 2016, for a period of review ("POR") covering July 31, 2014 to January 31, 2016. *See Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 81 Fed. Reg. 20,324 (Dep't Commerce Apr. 7, 2016).   Commerce selected Trina as the sole mandatory respondent for individual examination.   Memorandum from Jeff Pedersen, Senior Int'l Trade Compliance Analyst, Off. IV, AD/CVD Operations, Enf't and Compliance, to Abdelali Elouaradia, Director, Off. IV, AD/CVD Operations, Enf't and Compliance, re: *2014-2016 Antidumping Duty Administrative Review of Certain Crystalline Silicon Photovoltaic Products from the People's Republic of China: Respondent Selection* (May 24, 2016), C.R. 31, P.R. 94.

On March 7, 2017, Commerce published the preliminary results of the administrative review. *See Certain Crystalline Silicon Photovoltaic Products from the People's Republic of China*, 82 Fed. Reg. 12,793 (Dep't Commerce Mar. 7, 2017) (prelim. results of antidumping duty admin. rev. and prelim. deter. of no shipments; 2014-2016) and accompanying Issues and Decision Memorandum ("Prelim I&D Memo"), P.R. 223. On July 12, 2017, Commerce published the final results of the antidumping duty administrative review. *See Final Results*. Based in part on the findings described below, Commerce calculated a final antidumping duty margin of 9.61 percent for Trina and the "separate rate" respondents. *Id.* at 32,171.

### A.   Adjustment to Trina's Net U.S. Selling Prices to Account for Subsidies Countervailed in Companion Countervailing Duty Investigation

In the preliminary results of the underlying review, Commerce concluded that it was not appropriate to increase Trina's U.S. prices by the amount of any countervailing duty imposed to

offset an export subsidy. Prelim I&D Memo at 26. While Commerce had countervailed the Ex-Im Bank Export Buyer's Credit Program in the companion countervailing duty investigation, this was a result of the application of adverse facts available due to the Government of China's failure to cooperate with the investigation. *See id.* Because the agency never determined that the program in question was an export subsidy, it found that an offset in the antidumping duty administrative review would be inappropriate. *See id.*

In its case brief, Trina argued that Commerce should increase its constructed export price to offset the countervailed China Ex-Im Bank Export Buyer's Credit Program. Letter from Trade Pacific PLLC to Sec'y Commerce, re: *Crystalline Silicon Products from the People's Republic of China – Case Brief* (Apr. 11, 2017), P.R. 244-245 ("Trina Case Brief") at 4-6. In response, SolarWorld argued that such an offset was inappropriate because the countervailing of the Ex-Im Bank Buyer's Credit Program was based on adverse facts available. Letter from Wiley Rein LLP to Sec'y Commerce, re: *Certain Crystalline Silicon Photovoltaic Products from the People's Republic of China: Rebuttal Brief of SolarWorld Americas, Inc.* (Apr. 20, 2017), P.R. 251, C.R. 233 ("SolarWorld Rebuttal Brief") at 4-7.

In the final results of the review, Commerce maintained its finding from the preliminary results. Because the determination to countervail the relevant subsidy program was based on adverse facts available as a result of non-cooperation by the Government of China, and the agency did not make a determination that the program in question was contingent on export performance, Commerce continued to find that an export subsidy offset was inappropriate. I&D Memo at cmt. 2.

**NON-CONFIDENTIAL VERSION**

### B.   Import Data with Zero Quantities in the Surrogate Value Calculations

In the preliminary results of the review, Commerce included in its surrogate value calculations certain import values with corresponding import quantities of zero. Trina argued that such values should be excluded from Commerce's surrogate value calculations for the final results. Trina Case Brief at 17-20. In so arguing, Trina presented an analysis claiming that if a certain number of data points with zero quantity were truly below 0.5 and rounded to zero, it would be reasonable to assume that double that quantity of data points would fall between 0.5 and 1.49 and be rounded to one. *Id.* at 18. Because that was not the case, Trina concluded that the zero quantities must be due to some cause other than rounding, which purportedly diminished the accuracy of the surrogate values. *See id.* at 17-20.

SolarWorld responded that Commerce had reasonably determined, as it had in the past, that instances of data points with zero quantities reflected imports that had been rounded to zero and were thus appropriately included in the agency's calculations. SolarWorld Rebuttal Brief at 12-14. SolarWorld further explained that Trina's analysis on this issue was flawed, and that excluding the instances where zero quantity was reported would conflict with the agency's past practice. *See id.*

In its final results, Commerce concluded that the import data with a value but zero quantity were not errors nor unreliable, in part because there appeared to be no errors with respect to value nor other errors in the GTA dataset, and the zero quantities were attributable to rounding small quantities down to zero. *See* I&D Memo at cmt. 3. Commerce also rejected Trina's erroneous analysis, as there was no evidence to suggest that each 0.5 interval in unit of measure would have the same number of imports associated with it. *See id.* Thus, Commerce continued to include such data in its surrogate value calculations.

6

Consol. Ct. No. 17-00199                                 **NON-CONFIDENTIAL VERSION**

C.   **Debt Restructuring Income in the Calculation of Trina's U.S. Indirect Selling Expenses**

In its initial Section C questionnaire response, Trina offset its U.S. indirect selling expenses by certain debt restructuring costs.   Letter from Trade Pacific PLLC to Sec'y Commerce re: *Certain Crystalline Silicon Photovoltaic Products from the People's Republic of China: Section C and D Questionnaire Response* (July 19, 2016), P.R. 129-131, C.R. 113-126, at Exhibit C-10.   In a supplemental questionnaire, Commerce directed Trina to submit a revised U.S. indirect selling expense rate by removing the costs of debt restructuring. Letter from Howard Smith, Program Manager, to Changzhou Trina Solar Energy Co., Ltd. and Trina Solar (Changzhou) Science & Technology Co., Ltd. re: *First Supplemental Questionnaire in the Antidumping Duty Review of Certain Crystalline Silicon Photovoltaic Products from the People's Republic of China* (Aug. 8, 2016), P.R. 136, C.R. 150, at questions 57 and 58.   In response, Trina submitted a revised U.S. sales file, which contained two U.S. indirect selling expense fields: field INDIRSU, which consisted of the U.S. indirect selling expenses offset by the debt restructuring income, and an additional field, INDIRS2U, which reflected U.S. indirect selling expenses without the offset for the debt restructuring.   Letter from Trade Pacific PLLC to Sec'y Commerce re: *Certain Crystalline Silicon Photovoltaic Products from the People's Republic of China: First Supplemental Questionnaire Response* (Aug. 29, 2016). P.R. 159-161, C.R. 167-176 at Exhibit 3.   In the net U.S. price calculations for the preliminary results, Commerce [

].  However, after arguments by SolarWorld

in its case brief, *see* Letter from Wiley Rein LLP to Sec'y Commerce, re: *Certain Crystalline Silicon Photovoltaic Products from the People's Republic of China: Case Brief of Solar World*

7

**Business Proprietary Information Has Been Deleted**

**NON-CONFIDENTIAL VERSION**

*Americas, Inc.* (Apr. 11, 2017), P.R. 244/C.R. 232 ("SolarWorld Case Brief") at 23-25,

Commerce changed its calculation of Trina's indirect selling expenses for the final results and

disallowed the debt restructuring income offset, because "Trina did not provide sufficient

information and the record is unclear regarding its debt restructuring agreement, such as

explanations or terms of the agreement, to allow the Department to determine the current portion

of the gain." I&D Memo at Cmt. 9.

## IV.     **STANDARD OF REVIEW**

Under the Tariff Act of 1930, as amended (the "Act"), the Court reviews a Commerce

determination in the course of AD/CVD investigations by assessing whether it is "unsupported

by substantial evidence on the record, or otherwise not in accordance with law."

19 U.S.C. § 1516a(b)(l)(B)(i). The Supreme Court has defined "substantial evidence" as "such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 477 (1951) (citation omitted). According to

the Court, substantial evidence is "something less than the weight of the evidence, and the

possibility of drawing two inconsistent conclusions from the evidence does not prevent an

administrative agency's finding from being supported by substantial evidence." *Consolo v. Fed.*

*Mar. Comm'n*, 383 U.S. 607, 620 (1966) (citation omitted).

Congress intended, and this Court has affirmed that, "Commerce is afforded great latitude

in the choice of methodology to be employed in antidumping investigations." *Torrington Co. v.*

*United States*, 19 Ct. Int'l Trade 403, 429 (1995), *aff'd*, 127 F.3d 1077 (Fed. Cir. 1997) (citation

omitted). As long as Commerce's methodology is reasonable and its conclusions are supported

by substantial evidence, "the Court will not impose its own views as to the sufficiency of the

agency's investigation or question the agency's methodology." *Id.* (citation omitted).

Case 1:17-cv-00199-CRK   Document 41   Filed 06/08/18   Page 13 of 22

Consol. Ct. No. 17-00199                              NON-CONFIDENTIAL VERSION

To determine whether an agency's determination is in accordance with law, the Court

conducts the two-step analysis articulated in *Chevron U.S.A., Inc. v. Nat. Res. Defense Council,*

*Inc.*, 467 U.S. 837, 842-43 (1984).  Under the first step of this analysis, the Court must determine

whether Congress has spoken directly to the exact question at issue.  If so, the Court is required

to give effect to the "unambiguously expressed intent of Congress."  *Wheatland Tube Co. v.*

*United States*, 495 F.3d 1355, 1359 (Fed. Cir. 2007) (quoting *Chevron U.S.A.*, 467 U.S. at 842-

43).  If Congress has not spoken directly to the exact question at issue, the Court must determine

whether Commerce's interpretation is based on a reasonable construction.  As courts have

routinely emphasized, Commerce's construction need not be the only reasonable interpretation or

even the most reasonable interpretation to be based on a reasonable construction.  *Id*. at 1359-60.

## V.   ARGUMENT

### A.   Commerce Properly Determined Not to Offset Trina's U.S. Prices to Account for the Countervailed Ex-Im Bank Buyer's Credit Program

Trina argues that Commerce was required to offset its net U.S. selling prices to account

for export subsidies – specifically, the China Ex-Im Bank Buyer's Credit Program –

countervailed in the companion countervailing duty investigation.  Trina 56.2 Br. at 4-9.  Trina's

arguments are flawed, and Commerce's determination not to grant an export subsidy offset in the

underlying review should be sustained.

Trina argues that section 772(c)(1)(C) of Tariff Act of 1930, as amended, ("the Act") and

Commerce's practice require the agency "to offset existing export subsidy assessment rates

against the antidumping duty margin calculated because *not* to do so would result in the

application of antidumping duties on reduced export prices that result from the same export

subsidy that has been remedied by the countervailing duty rate."  Trina 56.2 Br. at 4-5 (emphasis

**NON-CONFIDENTIAL VERSION**

in original).  While the "export subsidy offset {may be} statutorily mandated," *id.* at 5, Trina

misses the point – namely, the China Ex-Im Bank Buyer's Credit Program was never determined

to be an "export subsidy."    In fact, Commerce was prevented from making any such

determination, because the Government of China failed to provide information regarding and

otherwise cooperate with the agency's investigation of the subsidy program, requiring

Commerce to rely on adverse facts available in countervailing the program.  *See* Issues and

Decision Memorandum accompanying *Countervailing Duty Investigation of Certain Crystalline

Silicon Photovoltaic Products from the People's Republic of China*, 79 Fed. Reg. 76,962 (Dep't

Commerce Dec. 23, 2014) (final affirm. countervailing duty deter.) at cmt. 16 (unchanged in

*Certain Crystalline Silicon Photovoltaic Products from the People's Republic of China*, 80 Fed.

Reg. 8,592 (Dep't Commerce Feb. 18, 2015) (antidumping duty order; and amended final affirm.

countervailing duty deter. and countervailing duty order)).  For example, the Government of

China refused to respond even to "basic questions concerning the operation of the program,"

such as questions regarding the application process and eligibility criteria, sample application

forms, and a narrative describing how the Ex-Im Bank supervises and inspects loan usage. *Id. at

cmt. 16.*  Thus, Commerce did not have access to the information required to determine whether

the subsidy program at issue constituted an "export subsidy," let alone make such a

determination.

Trina argues that Commerce found that the subsidy program "was directly related to

exports."  Trina 56.2 Br. at 6.  However, Commerce's high-level description of the subsidy

program as generally relating in some way to "exported goods" does not constitute a specific

determination that the program in question was contingent on export performance.  As

Commerce noted in its final results, I&D Memo at cmt. 2, the statute defines an export subsidy to

10

Case 1:17-cv-00199-CRK   Document 41   Filed 06/08/18   Page 15 of 22

Consol. Ct. No. 17-00199                                        NON-CONFIDENTIAL VERSION

be "a subsidy that is, in law or in fact, contingent upon export performance, alone or as 1 of 2 or more conditions." 19 U.S.C. § 1677(5A)(B). Such a finding would have been required for the offset Trina requests, under section 772(c)(1)(C) of the Act. However, as noted above, Commerce was unable to make such a finding here, as it lacked requisite information about the subsidy program due to the Chinese government's failure to cooperate in the countervailing duty investigation. As such, Commerce properly determined not to grant Trina an offset to its U.S. prices for the countervailed Ex-Im Bank Buyer's Credit Program.

Trina further argues that Commerce's determination in the final results was also inconsistent with its past practice, as it granted an export subsidy offset related to this subsidy program in the original antidumping duty investigation. *See* Trina 56.2 Br. at 6-8. In support of this alleged "practice," Trina cites only the original investigation of the antidumping duty order under review here. *See id.* One case does not establish a "practice" that the agency is required to follow, particularly when the statute dictates another outcome. Here, there was no "export subsidy," as defined in the statute, for the agency to offset in Trina's U.S. prices, and Commerce properly determined not to do so.

**B.**   **Commerce's Inclusion in the Surrogate Value Calculation of Import Values with Import Quantities of Zero Was Supported by Substantial Evidence and Otherwise in Accordance with Law**

Trina argues that Commerce erred in including in its surrogate value calculations import data for which there were reported import values with corresponding import quantities of zero, claiming that this resulted in an overstatement of the surrogate values. *Id.* at 9-11. Trina's argument lacks merit, and Commerce's determination to include such import values in the surrogate value calculations was well-reasoned and consistent with both its discretion to administer the antidumping duty laws and its obligation to calculate dumping margins as

Case 1:17-cv-00199-CRK   Document 41   Filed 06/08/18   Page 16 of 22

Consol. Ct. No. 17-00199                          **NON-CONFIDENTIAL VERSION**

accurately as possible. *See Rhone Poulenc, Inc., v. United States*, 899 F.2d 1185, 1191 (Fed. Cir. 1990).

Commerce analyzed this issue in reaching its final results, and found "no basis to conclude that the zero quantity import data included in our {surrogate value} calculations {were} errors or that these zero quantity imports result{ed} in unreliable and distortive {surrogate values}." I&D Memo at cmt. 3. For example, Commerce reasoned that if the zero import quantities were a result of errors, it "would expect such errors to also occur with respect to the reported *value* in at least some instances; however there {were} no imports in the data with a zero value." *Id.* In addition, Commerce explained that zero-quantity imports occurred in the import data 8.7 percent of the time. *Id.* If these were all errors in the dataset, that would "suggest{} substantive error rates in the GTA data." *Id.* But no party suggested that the GTA data were unreliable overall, and there was no basis for such a conclusion in the record. Thus, it was reasonable for Commerce to conclude that the reported import data with zero quantities were attributable to rounding small quantities down to zero. *See id.*

Commerce also fully addressed Trina's argument that, if the 770 zero-quantity data points reflected imports with quantities below 0.5 units of measure (which were then rounded down to zero), it would be reasonable to expect that double that number of imports (*i.e.*, approximately 1,540 imports) would have fallen between 0.5 and 1.49 units of measure and rounded to a quantity of one, which was not the case. *Id.* (There were 348 imports with a quantity of one. *Id.*) While Trina now implies that Commerce simply rejected this argument outright, without analysis, *see* Trina 56.2 Br. at 10-11, Commerce in fact explained the flaws in Trina's argument. Commerce explained that Trina's argument assumed that there were 770 data points for each 0.5 interval in unit of measure – an assumption unsupported by the record. *See*

Case 1:17-cv-00199-CRK   Document 41   Filed 06/08/18   Page 17 of 22

Consol. Ct. No. 17-00199                                    NON-CONFIDENTIAL VERSION

I&D Memo at cmt. 3.  As Commerce reasonably noted, "there is no basis for concluding that every 0.5 interval in unit of measure {would} have 770 imports associated with it."  *Id.* Commerce thus appropriately rejected Trina's argument.

As the Federal Circuit has stated, "the question is whether the record adequately supports the decision of {Commerce}, not whether some other inference could reasonably have been drawn."  *Daewoo Elecs. Co. v. Int'l Union of Electronic Elec., Tech., Salaried, & Mach. Workers*, 6 F.3d 1511, 1520 (Fed. Cir. 1993).  *See also China Nat'l Mach. Imp. & Exp. Corp. v. United States*, 27 Ct. Int'l Trade 255 (2003) ("The Court's role… is not to evaluate whether the information Commerce used was the best available, but rather whether Commerce's choice of information is reasonable"); *Hercules, Inc. v. United States*, 11 Ct. Int'l Trade 710, 726 (1987) ("The decision to select a particular methodology rests solely within Commerce's sound discretion").  In this review, the record adequately supported Commerce's decision that imports with zero quantity had been rounded down to zero.

Finally, Trina argues that this Court remanded a similar issue to Commerce in the appeal of the final results of the *Solar I* second antidumping duty administrative review.  Trina 56.2 Br. at 9.  SolarWorld notes that the Court has now upheld Commerce's determination on remand to continue to include import data with zero quantities in its surrogate value calculations in that case.  *SolarWorld Americas v. United States*, Consol. Court No. 16-00134, Slip Op. 18-53 (May 18, 2018).  Moreover, Commerce provided more explanation for its determination of this issue in the final results of the underlying review than it did in the final results of the *Solar I* second antidumping duty administrative review.  *Compare* I&D Memo at cmt. 3 with Issues and Decision Memorandum accompanying *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China*, 81 Fed. Reg. 39,905 (Dep't

**NON-CONFIDENTIAL VERSION**

Commerce June 20, 2016) (final results of antidumping duty admin. review and final deter. of no

shipments; 2013-2014) at cmt. 22.  For example, Commerce's analysis finding that 8.7 percent of

the import data had zero quantities, and its response to Trina's argument regarding the number of

imports with zero quantities, were discussed at length in the underlying review's final results, but

were not included in the *Solar I* second antidumping duty administrative review final results.

Thus, as Commerce adequately explained its determination below, remand is not required – or

justified – in this appeal.

In sum, contrary to Trina's claims, Commerce's determination to include data with

import values and zero import quantities was a reasonable exercise of its discretion to administer

the antidumping duty laws, was appropriately reasoned and explained, and was consistent with

law.

### C.   Commerce Appropriately Disallowed Trina a Debt Restructuring Income Offset to Its U.S. Indirect Selling Expenses

Trina argues that Commerce acted arbitrarily and inconsistent with its established

practice in denying Trina an offset to its indirect selling expenses for its debt restructuring

income.  *See* Trina Br. at 11-14.  Trina's arguments are without merit and should be rejected.

In its brief, Trina states that "{w}hen considering a U.S. affiliate that is engaged only in

selling activities, it is Commerce's long-standing practice to treat all of its selling, G&A, and

financial expenses and income as related to sales."  *Id.* at 11 (emphasis added).  This is incorrect.

Rather, as the agency clearly explained in the final results, Commerce's "practice is to allow an

offset only for the current portion of the debt restructuring gain."  I&D Memo at cmt. 9.  In

support of this statement, Commerce cited three cases that lay out its established practice.  *See*

*id.* (citing Issues and Decision Memorandum accompanying *Structural Steel Beams From South*

14

*Korea*, 65 Fed. Reg. 41,437 (Dep't Commerce July 5, 2000) (notice of final deter. of sales at less than fair value) at cmt. 26 "…Kangwon's accounting treatment of the gain on exemption of debt distorts its reported costs, as it fails to match the current period gain with the associated expense… Thus, for the final determination, we reversed the full gain and reduced Kangwon's interest expense for the <u>current portion of the gain on debt restructure</u>") (emphasis added); *Certain Preserved Mushrooms From India*, 68 Fed. Reg. 41,303 (Dep't Commerce July 11, 2003) (final results of antidumping duty admin. review) at cmt. 13 ("It is the {agency's} practice to offset financial expenses <u>only with the current portion of gain on debt restructure</u>") (emphasis added); *Light-Walled Rectangular Pipe and Tube From Mexico*, 69 Fed. Reg. 53,677 (Dep't Commerce Sept. 2, 2004) (notice of final deter. of sales at less than fair value) at cmt. 28 ("…<u>only the current portion of the gain { on debt restructuring} should be included in the financial expense ratio</u>") (emphasis added). See also Issues and Decision Memorandum accompanying *Certain Cut-to-length Carbon Steel Plate From Mexico*, 68 Fed. Reg. 13,260 (Dep't Commerce Mar. 19, 2003) (final results of antidumping duty admin. review) at cmt. 1.

Thus, Commerce's practice on this issue is well-established. Trina's argument that "{f}or more than 25 years, Commerce consistently has held that all activities of an entity that functions solely as a selling entity are related to sales" is misplaced, as it disregards the temporal requirement of the income gained/expenses incurred. Trina 56.2 Br. at 12. It is Commerce's practice – and a wholly reasonable practice – that adjustments are permitted for only the portion of the gain – here, the debt restructuring income – that pertains to the current period of review.

Moreover, according to the agency's regulations, "any party seeking to report an expense or a price adjustment on an expense or a price adjustment on an allocated basis must demonstrate to the Secretary's satisfaction that the allocation is calculated on as specific a basis as is feasible,

Case 1:17-cv-00199-CRK   Document 41   Filed 06/08/18   Page 20 of 22

Consol. Ct. No. 17-00199                          **NON-CONFIDENTIAL VERSION**

and must explain why the allocation methodology used does not cause inaccuracies or distortions." 19 C.F.R. § 351.401(g)(2).  Thus, Trina's statement that "Commerce's conclusion that the debt-restructuring line-item was not related to the current period was based on speculation" is also misplaced.  Trina 56.2 Br. at 13.  It is the <u>respondent</u> who bears the burden of demonstrating that it is entitled to a favorable adjustment.  In the underlying review, it was Trina's responsibility to demonstrate that its debt-restructuring line-item was related to the current period, and Trina failed to meet that burden.  *See* SolarWorld Case Brief at 23-25.  As such, Commerce's conclusion was based not on speculation, but on the lack of record data, which resulted from Trina's own failure to produce information required for the agency to make a finding.

For instance, Trina failed to provide a copy of the restructuring agreement, which would have contained critical information such as the terms and maturity of the loans and the renegotiated interest rate.  It was also unclear from the information provided by Trina whether the debt restructuring entailed the renegotiation of a short-term or long-term loan, or a consolidation of several loans that cover multiple periods.  And perhaps most importantly, Trina

[


].  *See* Letter from Trade Pacific PLLC to Sec'y Commerce re: *Certain Crystalline Silicon Photovoltaic Products from the People's Republic of China: Section A Questionnaire Response* (June 24, 2016), P.R. 107-121 /C.R. 34-110, at Ex. A-18, 2015 P&L, p. 3.  In other words, Trina failed to provide information that was critical for the agency to determine which, if any, portion of the debt restructuring income was attributable to the relevant period of review.  Commerce was not required to ask for

16

**Business Proprietary Information Has Been Deleted**

Case 1:17-cv-00199-CRK   Document 41   Filed 06/08/18   Page 21 of 22

Consol. Ct. No. 17-00199                                    **NON-CONFIDENTIAL VERSION**

this essential information multiple times from the respondent prior to making its determination. Trina had numerous opportunities to provide the data. But at the time of the final results, the requisite information was simply not on the record, leaving Commerce with no choice but to disallow the adjustment.

Thus, Commerce's finding that Trina failed to provide sufficient information regarding its debt restructuring agreement to allow Commerce to determine the current portion of the gain, in accordance with agency practice, was supported by substantial evidence and reasonable. *See* I&D Memo at cmt. 9. As such, it was fully appropriate for the agency to disallow Trina's debt restructuring incoming offset.

## VI.    <u>CONCLUSION</u>

For the foregoing reasons, SolarWorld respectfully requests that the Court deny Trina's motion for judgment on the agency record and find that Commerce's above-described determinations in the Final Results were supported by substantial evidence and otherwise in accordance with law.

Respectfully submitted,

/s/ Timothy C. Brightbill
Timothy C. Brightbill, Esq.
Laura El-Sabaawi, Esq.

**WILEY REIN LLP**
1776 K Street, NW
Washington, DC 20006
(202) 719-7000

*Counsel for SolarWorld Americas, Inc.*

June 8, 2018

CERTIFICATE OF COMPLIANCE

Pursuant to Chambers Procedure 2(B)(1), the undersigned certifies that this brief complies with the word limitation requirement.   The word count for the Response Brief of Defendant-Intervenor SolarWorld Americas, Inc., as computed by Wiley Rein LLP's word processing system (Microsoft Word 2016), is 5,026 words.

_____ /s/ Timothy C. Brightbill _____
(Signature of Attorney)

_____ Timothy C. Brightbill _____
(Name of Attorney)

_____ SolarWorld Americas, Inc. _____
(Representative of)

_____ June 8, 2018 _____
(Date)