# UNITED STATES COURT OF INTERNATIONAL TRADE

_____
)
CHANGZHOU TRINA SOLAR ENERGY CO. LTD.,   )
ET AL.,                                  )
                                         )
    Plaintiffs and Consolidated           )
    Plaintiff,                            )
                                         )
v.                                       )
                                         )
UNITED STATES,                           )   Before: Claire R. Kelly, Judge
                                         )
    Defendant,                            )   Consol. Court No. 17-00199
                                         )
and                                      )
                                         )
SOLARWORLD AMERICAS, INC. and            )
CHANGZHOU TRINA SOLAR ENERGY CO., LTD.,  )
                                         )
    Defendant-Intervenor and              )
    Consolidated Defendant-Intervenor.    )
_____)


## PLAINTIFF TRINA'S REPLY TO DEFENDANT'S AND DEFENDANT-INTERVENOR'S RESPONSES TO TRINA'S MOTION FOR JUDGMENT ON THE AGENCY RECORD

Robert G. Gosselink
Jonathan M. Freed
**TRADE PACIFIC PLLC**
660 Pennsylvania Avenue, SE, Suite 401
Washington, D.C.  20002
(202) 223-3760

Counsel to Plaintiffs Changzhou Trina Solar Energy
Co., Ltd.; Trina Solar (Changzhou) Science and
Technology Co., Ltd.; and Trina Solar (U.S.) Inc.

Dated:  July 19, 2018

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS.................................................................................................. i

TABLE OF AUTHORITIES .......................................................................................... ii

I.      INTRODUCTION ............................................................................................... 1

II.     ARGUMENT ....................................................................................................... 1

A.      Commerce Should Have Adjusted Trina's Net U.S. Selling Price To Account for Export Subsidies Countervailed in the Companion Countervailing Duty Order.... 1

B.      Defendant and Defendant-Intervenor Fail to Justify Commerce's Disallowance of Debt Restructuring Income as an Offset to Indirect Selling Expenses…..…………………………………………………………..…………….10

C.      Commerce Should Not Have Included Import Data in Its Calculation of Surrogate Values Where Import Values Were Reported With No Corresponding Import Quantities………………………………………………………………..……….15

III.    CONCLUSION.................................................................................................. 18

# TABLE OF AUTHORITIES

**Statutes**

19 U.S.C. § 1675b ..................................................................................................5

19 U.S.C. § 1677(5) ...............................................................................................5

19 U.S.C. §1677a(c)(1)(C).................................................................................2, 9

19 U.S.C. § 1677e.............................................................................................. 4-5

**Regulations**

19 C.F.R. § 351.401(g)(2)……………………………………………………………10-11

**Judicial Decisions**

*Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1970).............................................................................................................................4

*Creswell Trading Company, Inc. v. United States*, 15 F.3d 1054, (Fed. Cir. 1994)…..……..12-13

*Jinko Solar Co., Ltd. et al, v. United States*, 229 F.Supp.3d 1333, 1359 (CIT May 2017) ...........9

Lal v. INS, 255 F.3d 998, 1008-09 (9th Cir. 2001)……………………...…………………………..8

*Magnola Metallurgy, Inc. v. United States*, 508 F.3d 1349, 1355 (Fed. Cir. 2007)………………6

*Motor Vehicle Mfrs. Ass'n v. State Farm,* 463 U.S. 29, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983)………………………………………………………………………………………3-4, 8

*N.Y. Pub. Interest Research Group v. Johnson*, 427 F.3d 172, 182-183 (2d Cir. 2005)…………..8

*SEC v. Chenery Corp.,* 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626 (1943)…………………………4

*Solarworld Americas, Inc. v. United States*, 2017 WL 4844276, CIT Slip Op. 17-143, (Oct 17, 2017) ............................................................................................................ 16-17

*SolarWorld Americas* v. *United States,* Consol. Court No. 16-00134, CIT Slip Op. 18-53 (May 18,2018) ....................................................................................................... 16-17

## Administrative Determinations

*Aluminum Extrusions from the People's Republic of China*, 81 Fed. Reg. 92778 (December 20, 2016)……………………………………………………………………………………………6

*Certain Crystalline Silicon Photovoltaic Products From the People's Republic of China: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2014-2016*, 82 Fed. Reg. 32.170 (Dep't Commerce, July 12, 2017) ................................... *passim*

*Certain Frozen and Canned Warmwater Shrimp From Ecuador*, 69 Fed. Reg. 76913 (December 23, 2004)……………………………………………………………………………………………14

*Certain Orange Juice from Brazil; Final Results of Antidumping Duty Administrative Review*, 76 Fed. Reg. 50176 (August 12, 2011) ........................................................................................15

*Certain Pasta from Italy*, 81 Fed. Reg. 8918 (February 23, 2016)……………………………..6

*Circular Welded Pipe from Pakistan: Preliminary Affirmative Antidumping Duty Determination*, 81 Fed. Reg. 36,876 (Dep't of Commerce June 8, 2016)………………………………………8-9

*Citric Acid and Certain Citrate Salts from the People's Republic of China Final Results of Countervailing Duty Administrative Review*, 80 Fed. Reg. 77318 (December 14, 2015)………..6

*Countervailing Duty Investigation of Certain Crystalline Silicon Photovoltaic Products From the People's Republic of China: Final Affirmative Countervailing Duty Determination*, 79 Fed. Reg. 76962 (Dec. 23, 2014) ..................................................................................................... *passim*

*Certain Crystalline Silicon Photovoltaic Products From the People's Republic of China: Final Determination of Sales at Less Than Fair Value*, 79 Fed. Reg. 76970 (Dec. 23, 2014) ...... *passim*

*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2012–2013*, 80 Fed. Reg. 40,998 (July 14, 2015) .....................7

*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China: Final Results of Countervailing Duty Administrative Review*, 80 Fed. Reg. 41003, (July 14, 2015)………………………………………………………………7, 9

*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2013–2014*, 81 Fed. Reg. 39905 (June 20, 2016) ..................................................................................................................16

*Light-Walled Rectangular Pipe and Tube from Mexico*, 69 Fed. Reg. 53677 (September 2, 2004)……………………………………………………………………………………..13

*Preserved Mushrooms from India*, 68 Fed. Reg. 41303 (July 11, 2003)………………………...13

*Stainless Steel Sheet and Strip from China: Preliminary Antidumping Duty Determination*, 81 Fed. Reg. 64135 (Dep't of Commerce Sept. 19, 2016)…………………………………………8-9

*Stainless Steel Sheet and Strip in Coils from Mexico; Final Results of Antidumping Duty Administrative Review*, 73 Fed. Reg. 7710 (February 11, 2018)………………………………..15

*Structural Steel Beams from South Korea,* 65 Fed. Reg. 41437 (July 5, 2000)…………………13

**PLAINTIFF TRINA'S REPLY TO DEFENDANT'S AND
DEFENDANT-INTERVENOR'S RESPONSES TO TRINA'S MOTION
<u>FOR JUDGMENT ON THE AGENCY RECORD</u>**

## I.      INTRODUCTION

Plaintiffs, Changzhou Trina Solar Energy Co., Ltd.; Trina Solar (Changzhou) Science and Technology Co., Ltd.; and Trina Solar (U.S.) Inc., (hereinafter Plaintiffs or "Trina"), hereby reply to *Defendant's Response in Opposition to Plaintiffs' Rule 56.2 Motions for Judgment Upon the Agency Record*, June 7, 2018 ("*Commerce's Response*") and to *Response of Defendant-Intervenor SolarWorld Americas*, Inc., June 7, 2018 ("*SolarWorld's Response*").

This action is an appeal from the U.S. Commerce Department's final results of administrative review in *Certain Crystalline Silicon Photovoltaic Products From the People's Republic of China: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2014-2016*, 82 Fed. Reg. 32.170 (Dep't Commerce, July 12, 2017) ("*Final Results*"), PR 266, and accompanying Issues and Decision Memorandum for Certain Crystalline Silicon Photovoltaic Products From the People's Republic of China (July 5, 2017), available at <u>https://enforcement.trade.gov/frn/summary/prc/2017-14611-1.pdf</u> ("*Decision Memorandum*"), PR 259.

## II.      ARGUMENT

### A.      Commerce Should Have Adjusted Trina's Net U.S. Selling Prices to Account for Export Subsidies Countervailed Under the Companion Countervailing Duty Order

*Commerce's Response* and *SolarWorld's Response* ignore Commerce's findings, contradict Commerce's prior determinations, and assert conclusions that cannot be supported.

In *Trina's Brief*, Trina explained that the statute requires that "where goods are subject to

both antidumping duties and countervailing duties, the statute instructs that, 'the price used to establish export price and constructed export price **shall be**—(1) increased by…..(C) the amount of any countervailing duty imposed on the subject merchandise under part I of this subtitle to offset an export subsidy'"[1]   Trina also explained that in administrative reviews, the "Department's practice is to rely on the export subsidy rates found in the most recently completed segment of the companion CVD proceeding (*i.e.*, the most recently published CVD final determination or final results of administrative review)" to adjust the U.S prices upwards for export subsidies in accordance with 19 U.S.C. §1677a(c)(1)(C).[2]   Thus, for the administrative review underlying this appeal, the countervailing duty rate of 10.54 percent determined in the original countervailing duty investigation of solar products to countervail the Ex-Im Buyer's Credit program[3] is the rate that should have been used to adjust Trina's U.S. selling prices upwards in the dumping calculation.[4]

In original investigations, the export subsidy adjustment is based on the export subsidies determined in the companion countervailing duty investigation, not a prior determination.  Thus,

---

[1] *Trina's Brief* (Feb. 2, 2018), at 4*, citing* 19 U.S.C. §1677a(c)(1)(C).

[2] *Id.*, at 8.

[3] The program has been referred to as the Export Buyer's Credit Program, the Ex-Im Bank Buyer's Credit Program, the Ex-Im Bank Buyer's Credit Program, and more generally as Export Credit Subsidy.  Plaintiff refers to the program throughout this memorandum to the program as the Ex-Im Buyer's Credit program.

[4] *See Countervailing Duty Investigation of Certain Crystalline Silicon Photovoltaic Products From the People's Republic of China: Final Affirmative Countervailing Duty Determination*, 79 Fed. Reg. 76962 (Dec. 23, 2014) ("*Solar Products CVD Final*"), and accompanying Issues and Decision Memorandum, page 30, available at https://enforcement.trade.gov/frn/summary/prc/2014-30071-1.pdf, *see also*, Trina Factual Information Submission, Exhibit L, Amended Final Determination Analysis Memorandum for Trina (Jan. 30, 2017), PR 207, Barcode 3539773-03.

the export subsidy adjustment granted in *Solar Products LTFV Final*[5] was based on the companion determination in *Solar Products CVD Final*. That Commerce granted the export subsidy adjustment in *Solar Products LTFV Final* further establishes that Commerce found benefits under the Ex-Im Buyer's Credit program to be export subsidies in *Solar Products CVD Final* because such a finding is a necessary condition for making the export subsidy adjustment. Stated differently, logic demands that if the export subsidy adjustment in antidumping calculations relates only to export subsidies and Commerce relied on its determination of countervailability of the Ex-Im Buyer's Credit program in *Solar Products CVD Final* for the export subsidy adjustment used in *Solar Products LTFV Final*, then the Ex-Im Buyer's Credit program in *Solar Products CVD Final* must be an export subsidy.

In *SolarWorld's Response*, SolarWorld asserts that the "China Ex-Im Bank Buyer's Credit Program was never determined to be an export subsidy." This conclusion is wholly illogical and unsupportable for the reasons explained above.[6] In *Commerce's Response*, Defendant asserts for the first time that "Commerce determined specificity on the basis of AFA and not a finding of export contingency."[7] This conclusion is similarly flawed for several reasons. First, the determination in *Solar Products CVD Final* never mentions that the agency determined specificity on the basis of AFA, and Defendant's assertion constitutes impermissible *post hoc* rationalization.[8] But, even if such *post hoc* rationalization could be considered, the

---

[5] *Certain Crystalline Silicon Photovoltaic Products From the People's Republic of China: Final Determination of Sales at Less Than Fair Value*, 79 Fed. Reg. 76970 (Dec. 23, 2014), Issues and Decision Memorandum, Comment 3 ("*Solar Products LTFV Final*").

[6] *SolarWorld Response*, at 10.

[7] *Commerce Response*, at 24.

[8] "It is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself." *Motor Vehicle Mfrs. Ass'n v. State Farm*, 463 U.S. 29, 50, 103 S.Ct. 2856,

rationalization cannot support Defendant's determination in the *Final Results* because it conflicts with the statute and judicial precedent in several ways.

Although Commerce may reasonably invoke its authority under 19 U.S.C. § 1677e to use facts otherwise available with an inference adverse to the respondent government or respondent exporter, "the agency must still make the necessary factual findings to satisfy the requirements for countervailability."[9]  So, Commerce still must make its determinations with regard to whether the program provided a "financial contribution" within the meaning of 19 U.S.C. § 1677(5)(D), conferred a "benefit" within the meaning of 19 U.S.C. § 1677(5)(E), and was "specific" within the meaning of 19 U.S.C. § 1677(5A).

The determination in *Solar Products CVD Final* does not identify any missing information with respect to whether the Ex-Im Buyer's Credit program was specific.  Before reaching determinations based on adverse inferences under 19 U.S.C. § 1677e(b), Commerce first must identify the information necessary to its determination that is not on the record in accordance with 19 U.S.C. § 1677e(a).  In *Solar Products CVD Final*, the determination to apply AFA was based on Commerce's conclusion that "it could not verify the government's reported

---

77 L.Ed.2d 443 (1983) ("*State Farm*"); To the extent that an agency's explanation prepared during the course of litigation may be a post hoc rationalization for its decision, such explanation "must be viewed critically" by the court. *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 420, 91 S.Ct. 814, 826, 28 L.Ed.2d 136 (1970). "The grounds upon which an administrative order must be judged are those upon which the record discloses that [the agency's] action was based." *SEC v. Chenery Corp.*, 318 U.S. 80, 87, 63 S.Ct. 454, 459, 87 L.Ed. 626 (1943).

[9] *Changzhou Trina Solar Energy Co., Ltd., et. al, v. United States*, 195 F.Supp. 3d 1334, 1350 (CIT - Dec 30, 2016) ("*Trina Solar*"), *citing* 19 U.S.C. §§ 1677e(a)–(c) (providing that, even when using facts otherwise available with adverse inferences, Commerce still must point to actual information on the record to make required factual determinations); id. at § 1677(5)(A) (requiring a factual determination of "specificity" under 19 U.S.C. § 1677(5A) as an element of countervailability); id. at § 1677(5A) (providing for a range of factual determinations to satisfy § 1677(5)(A)'s requirement for "specificity").

17-00199 – Trina's Reply Brief

non-use of export buyer's credits by the company respondents."[10]  Thus, the information missing

with respect to the Ex-Im Buyer's Credit program was whether the program was used by

respondents, not whether it was specific.  In the *Final Results*, Commerce attempted to use the

fact that AFA was used with respect to the Ex-Im Buyer's Credit program as a cloak for

concealing the basis for making the requisite specificity finding for countervailability in *Solar*

*Products CVD Final*.  But, Commerce's characterization in the *Final Results* of its determination

in *Solar Products CVD Final* is logically and statutorily impossible.

Assuming, for the sake of argument, that Commerce had made a specificity determination

on AFA, Commerce still must have derived such AFA determination from "(A) the petition, (B)

a final determination in the investigation under this subtitle, (C) any previous review under

section 1675 of this title or determination under1675b of this title, or (D) any other information

placed on the record."[11]  In the *Solar Products LTFV Final* or the *Final Results*, Commerce

never identified which of the four sources of information it used as a basis for determining the

facts available with adverse inferences. [12] But the determination of specificity, or in this case the

determination of export contingency, must have been implied and based upon record facts or one

of those sources identified in §1675b. Neither Commerce nor SolarWorld ever has cited to a

basis for finding specificity with regard to the Ex-Im Buyer's Credit program other than export

contingency.  Thus, the only reasonable conclusion is that Commerce based specificity on export

contingency rather than some other basis.  Again, that Commerce adjusted for export subsidies in

---

[10] *Solar Products CVD Final*, Issues and Decision Memorandum, at 92.

[11] 19 U.S.C. § 1677e(b) (emphasis added).

[12] Again, Commerce had no need for seeking facts available, adverse or otherwise, with regard to the specificity of the Ex-Im Buyer's Credit Program because there was no missing information on that issue.

*Solar Products LTFV Final* compels the conclusion that Commerce found the Ex-Im Buyer's

Credit program to be contingent on exports.

With regard to specificity determinations in particular, Commerce normally does not

revisit specificity in administrative reviews:

> We continue to find that the provision of aluminum extrusions for LTAR and the
> provision of glass for LTAR programs are specific, pursuant to section
> 771(5A)(D)(iii)(I) of the Act.  The Department *does not normally re-assess
> specificity findings made in previous segments of the same proceeding* if no new
> information is placed on the record.  Accordingly, *where the Department has
> previously found a program to be countervailable in an earlier segment of the
> proceeding,* the Department does not normally require the foreign government to
> provide a response to the questions in the Standard Questions Appendix with
> respect to that program, which speak to a program's specificity.

*Aluminum Extrusions from the People's Republic of China*, 81 Fed. Reg. 92778 (December 20,

2016) (Issues and Decision Memorandum, Comment 7) (citations omitted) (also quoting the

Initial Questionnaire, which states: "Absent new information warranting a program

reexamination, we will not reevaluate prior determinations regarding the countervailability of

programs.").  *See also Citric Acid and Certain Citrate Salts from the People's Republic of China

Final Results of Countervailing Duty Administrative Review*, 80 Fed. Reg. 77318 (December 14,

2015) (Issues and Decision Memorandum, Comment 1) (the Chinese government "has provided

no new evidence in this review that would cause us to reverse our findings from prior

administrative reviews regarding the specificity of the sulfuric acid for LTAR program");

*Certain Pasta from Italy*, 81 Fed. Reg. 8918 (February 23, 2016) (Issues and Decision

Memorandum, at 23) ("There have been no changes that would warrant reconsideration of our

previous specificity findings").  Notably, the Federal Circuit also has upheld this longstanding

practice.  *See Magnola Metallurgy, Inc. v. United States*, 508 F.3d 1349, 1355 (Fed. Cir. 2007)

("Commerce's policy is to require new facts or evidence of changed circumstances before it will

revisit an earlier specificity determination"). Having not revisited the finding of specificity in *Solar Products CVD Final* and *Solar Products LTFV Final* with new information, Commerce cannot ignore those findings now.

Furthermore, Commerce also explicitly found the Ex-Im Buyer's Credit Program to be contingent upon export performance in the first administrative review of the countervailing duty order on solar cells from China.[13] In *Solar1-AR1-CVD*, Commerce found that for the Ex-Im Buyer's Credit program Commerce was:

> not able verify the reported non-use of export buyer's credits during the verification of the GOC. As explained in the "Use of Facts Otherwise Available and Adverse Inferences" section above, we are determining, relying upon adverse facts available, that both the BYD Group and Lightway used this program during the POR. We find that financing from the Ex-Im Bank under this program constitutes a financial contribution within the meaning of sections 771(5)(B) and 771(5)(D)(i) of the Act. **We further find that this program is specific because it is contingent upon export performance**, within the meaning of section 771(5A)(A)-(B) of the Act.[14]

Again, Commerce has not cited to a basis for finding specificity with regard to the Ex-Im Buyer's Credit program other than export contingency. In *Solar1-AR1-CVD*, Commerce countervailed the Ex-Im Buyer's Credit program based on AFA, but also explicitly determined that the program was contingent upon export performance. Thus, the only reasonable conclusion is that in the *Solar Products CVD Final* Commerce based specificity on export contingency rather than some other basis.

---

[13] *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China: Final Results of Countervailing Duty Administrative Review*, 80 Fed. Reg. 41003, (July 14, 2015), and accompanying Issues and Decision Memorandum, page 33, available at https://enforcement.trade.gov/frn/summary/prc/2015-17241-1.pdf ("*Solar1-AR1-CVD*")

[14] *Id.*, (internal citations omitted, emphasis added).

 *Commerce's Response* also claims that Commerce was simply following its practice, albeit one that it had recently changed, not to adjust for export subsidies when the specificity for those subsidies was based on AFA.[15]  Putting aside the issue of whether Commerce's claimed new practice is consistent with the statute, Commerce never has explained such change in practice.  A federal agency may not announce a position that abruptly changes direction from prior agency pronouncements without providing a reasoned explanation for the change.[16] Courts reviewing abrupt agency changes of direction apply this principle not only when an agency formally rescinds or revises an existing regulation, but also when the agency alters a prior interpretation of its own rules or governing statute.[17]  As support for its change in practice, Commerce cites the *Preliminary Determinations* of two antidumping duty investigations that preceded the *Final Results*.[18]  But, in both *Strip from China* and *Pipe from Pakistan*, Commerce never explained the reasons for the change in practice, and mentioned only that it had determined

---

[15] *Commerce Response*, at 25.

[16] *See e.g.*, *State Farm,* 463 U.S. 29, 42 (1983) ("an agency changing its course by rescinding a rule is obligated to supply a reasoned analysis for the change beyond that which may be required when an agency does not act in the first instance").

[17] *See, e.g.*, *N.Y. Pub. Interest Research Group v. Johnson*, 427 F.3d 172, 182-183 (2d Cir. 2005) (holding that EPA failed to provide a reasoned analysis for not requiring a compliance schedule in a permit renewal for a non-compliant Clean Air Act source when it had required a compliance schedule in an earlier permit renewal under the same regulation); Lal v. INS, 255 F.3d 998, 1008-09 (9th Cir. 2001) (invalidating an agency interpretation of a regulation because agency changed course from its settled policies).

[18] *Commerce Response*, at 26, *citing*, *Stainless Steel Sheet and Strip from China: Preliminary Antidumping Duty Determination*, 81 Fed. Reg. 64135 (Dep't of Commerce Sept. 19, 2016) and accompanying Preliminary Decision Memorandum, at pages 12-13, available at https://enforcement.trade.gov/frn/summary/prc/2016-22397-1.pdf,; and *Circular Welded Pipe from Pakistan: Preliminary Affirmative Antidumping Duty Determination*, 81 Fed. Reg. 36,876 (Dep't of Commerce June 8, 2016) and accompanying Preliminary Decision Memorandum, at pages 9-10, available at https://enforcement.trade.gov/frn/summary/pakistan/2016-13481-1.pdf.

not to adjust the antidumping deposit rate for the export subsidies in the companion CVD

investigations because the determinations on specificity in those investigations were based on

AFA, not export contingency.  First, neither case mentions the Ex-Im Buyer's Credit Program,

only export subsidies generally.  Second, neither case acknowledges or explains that the agency

was making a change in practice. The two cases also were original investigations where the

mandatory respondents failed to cooperate or failed to demonstrate eligibility for a separate

rate.[19]  Thus, the issue of adjusting the antidumping calculation for export subsidies was not

challenged in those cases and there appears to have been little or no participation from the

respondent interested parties in those proceedings.  Thus, Commerce's statements in *Strip from

China* and *Pipe from Pakistan* cannot constitute explanations of a change in practice, nor has

Commerce provided one in this case.  Failure to explain a change in practice is reason enough to

grant Plaintiff Trina's request for relief.  But more importantly, Commerce's conclusion that it

did not find the Ex-Im Buyer's Credit program to be an export subsidy program is plainly

contradicted by *Solar Products LTFV Final*, the Court's affirmation in *Jinko Solar Co., Ltd. et

al, v. United States*[20], and Commerce's own determination in *Solar1-AR1-CVD*.  Any other

interpretation cannot be reconciled with either the statute or Commerce's determinations.

Therefore, Trina respectfully requests that the Court remand the *Final Results* to Commerce with

instructions to comply with 19 U.S.C. §1677a(c)(1)(C) and to adjust U.S. prices upwards for the

export subsidy rate of 10.54 percent.

---

[19] *Strip from China*, Preliminary Decision Memorandum, at 12; *Pipe from Pakistan*, Preliminary
Decision Memorandum, at 2, 10.

[20] *Jinko Solar Co., Ltd. et al, v. United States*, 229 F.Supp.3d 1333, 1359 (CIT May 2017).

### B.     Defendant and Defendant-Intervenor Fail to Justify Commerce's Disallowance of Debt Restructuring Income as an Offset to Indirect Selling Expenses

*Commerce's Response* and *SolarWorld's Response* fail to explain how Commerce's exclusion of TUS's debt restructuring income as an offset to its indirect selling expenses was appropriate and in accordance with law.  Rather than focusing on Trina's substantive arguments, the Defendant and SolarWorld instead claim that Trina bore the burden of demonstrating that it was entitled to a favorable adjustment, and that Trina failed to meet that burden.  But Trina met its response obligations and was under no burden to provide the additional evidentiary support that these parties now claim.  Instead, it was Commerce that was under a burden to request any supplemental information it deemed necessary, and Commerce's failure to do so and subsequent failure to include the debt-restructuring income in the calculation of TUS's indirect selling expense ratio is inherently unfair and unsupported by substantial evidence.

Pursuant to Commerce's regulations, "{a}ny party seeking to report an expense or a price adjustment on an allocated basis must demonstrate to the Secretary's satisfaction that the allocation is calculated on as specific a basis as is feasible, and must explain why the allocation methodology used does not cause inaccuracies or distortions.[21]  In its first supplemental response, Trina explained that:

> When considering a U.S. company that is engaged only in selling activities, it is the Department's practice to treat all expenses (including administrative and financial expenses) as selling expenses.  This practice does not reflect a finding that all such expenses for all U.S. companies are invariably indirect selling expenses.  Instead, it reflects the common-sense proposition that the expenses for administering a sales operation are necessarily sales administration costs or sales financial costs, which the Department routinely classifies as indirect selling expenses in any market.  For the same reason, the Department offsets any indirect

---

[21] 19 C.F.R. § 351.401(g)(2).

> selling expenses of an affiliated U.S. reseller engaged only in reselling merchandise with financial revenue and revenue related to general operations of the company because such income is necessarily sales-related (i.e., but for TUS's sales, TUS would not have incurred any debt restructuring expenses or income). If TUS had incurred debt restructuring expenses during the POR just as it did interest expenses, the Department naturally would include such expenses in TUS's indirect selling expenses just as it does interest expenses. The Department cannot take an inconsistent approach simply when the expense is negative instead of positive (i.e., is income), as experienced by TUS during the POR.

Trina Supplemental Response, Aug. 29, 2016, PR 160, Bar Code 3502018-02. By explaining that it had classified the debt restructuring income/expenses as *indirect* selling expenses (and thus not variable, or traceable to individual sales, under Commerce's antidumping duty questionnaire definition of "indirect" selling expenses) and also by describing the gain as related to the "general operations of the company," Trina identified the income as non-sale-specific, thus supporting its reporting on an allocated basis. By reiterating Commerce's longstanding practice of treating as related to sales all selling, G&A, and financial expenses of a U.S. affiliate that is engaged only in selling activities – an approach with which Defendant and Defendant-Intervenor wholly agree – and by analogizing debt restructuring gain to debt restructuring expenses, Trina fully explained why treating the income as an offset to indirect selling expenses did not cause inaccuracies or distortions. Trina therefore not only answered all the questions that Commerce asked related to the offset, but also fully met its burden under 19 C.F.R. § 351.401(g)(2). If Commerce had wanted additional information related to TUS's debt restructuring income – such as "the terms of the debt restructuring agreement," an "explanation of the agreement," or "the maturity of the related loans" as Defendant and Defendant-Intervenor now claim,[22] then it was incumbent upon Commerce to request such information to be provided. Trina is not a mind reader and cannot be expected to provide information that is neither requested nor intuitively

---

[22] *Commerce's Response*, at 39; *SolarWorld's Response*, at 16.

17-00199 – Trina's Reply Brief

needed.

It is not appropriate for Commerce to remain silent until it is too late to supplement the

administrative record and then make a decision that is adverse to Trina based on Commerce's

own failure to seek additional information.  In *Creswell Trading Company, Inc. v. United States*,

the Federal Circuit addressed the inherent unfairness of Commerce not requesting information

from a respondent and then relying on the absence of such information in making a

determination adverse to the respondent:

> Commerce is presumably in the best position to know what it means by its own
> requirements and what evidence will satisfy these requirements, and therefore,
> given the unique circumstances of this case, *Commerce at a minimum bore a
> burden of requesting any additional information that it required when it came to
> its conclusion during the course of its remand determination, contrary to earlier
> indications, that the information of record was insufficient*.  It was inherently
> unfair for Commerce to take an affirmative position during the course of its initial
> investigation that "world market price" information was "irrelevant" and then,
> when the time had long passed for submitting such information, to declare the
> missing information so relevant that it could not render a determination in its
> absence.  In this same vein, it also was unfair for Commerce to take an affirmative
> position during its remand investigation that it had all of the information that it
> needed and then declare in its final determination that the evidence was deficient
> without giving the Indian government or Appellants an opportunity to supplement
> the record.  Appellant Crescent appropriately summarized the unfairness at page 8
> of its reply brief when it stated: "India somehow had the burden to prove the
> 'international price' to the satisfaction of {Commerce}, even though what
> {Commerce} required of India was never known or communicated to India and
> was never even an issue at the administrative level."

15 F.3d 1054, 1062 (Fed. Cir. 1994) (emphasis added).  In this case, Trina met its burden of

establishing entitlement to the debt restructuring income offset by including the offset in the

indirect selling expense ratio calculation and thereafter fully explaining why the allocation

approach not only was as specific as feasible, but also necessary to avoid inaccuracies and

distortions.  After Trina responded to all the questions Commerce asked, the burden then shifted

to Commerce to ask for any clarifying information, if necessary.  In this case, where Commerce

"expressly agreed" that "*all* G&A expenses, as well as interest {and debt restructuring} income and expenses, of a U.S. sale's arm" should be included in the calculation of the indirect selling expense ratio,[23] it was especially incumbent on Commerce to ask for more information if Commerce thought the record was insufficient.  Following *Creswell*, it is inappropriate for Defendant and Defendant-Intervenor to claim now that Trina had an ongoing burden to provide additional information regarding its debt restructuring when what Commerce required of Trina never was known or communicated and never was requested at the administrative level.

What makes Defendant's and Defendant-Intervenor's responses more unreasonable is that none of the cases they cite with respect to the treatment of debt restructuring income is relevant to the particular facts of this case.  In *Structural Steel Beams from South Korea*, the issue was whether gain on the exemption of debt should be used "as an offset to interest expenses" as part of the cost of production calculation.[24]  In *Preserved Mushrooms from India*, the question was whether to revise the respondent's "financial expense ratio to exclude the gain on debt restructuring" "for purposes of calculating the COP."[25]  In *Light-Walled Rectangular Pipe and Tube from Mexico*, the issue again was whether the gain on debt restructuring "should be part of the financial expense ratio calculation."[26]  All of these cases involved the calculation of *financial expenses* as part of *cost of production*, and none of these cases involved including

---

[23] *Commerce's Response*, at 39.

[24] *Structural Steel Beams from South Korea,* 65 Fed. Reg. 41437 (July 5, 2000) (Issues and Decision Memorandum, Comment 26).

[25] *Preserved Mushrooms from India*, 68 Fed. Reg. 41303 (July 11, 2003) (Issues and Decision Memorandum, Comment 13).

[26] *Light-Walled Rectangular Pipe and Tube from Mexico*, 69 Fed. Reg. 53677 (September 2, 2004) (Issues and Decision Memorandum, Comment 28).

17-00199 – Trina's Reply Brief

debt restructuring gain as part of *indirect selling expenses*.  Defendant and Defendant-Intervenor

cannot on one hand agree that debt restructuring income and expenses of a U.S. sales arm must

be part of the *indirect selling expense* ratio calculation, and on the other hand posit that such

income/expenses must be treated as Commerce historically has treated *financial expenses* in

financial ratio calculations.

Unlike financial expenses, it is Commerce's normal practice to calculate indirect selling

expense ratios based on all expenses incurred and all sales revenue recognized (or cost of goods

sold) during the same period of time.  This is because:

> **Indirect selling expenses are period expenses which cannot be associated
> directly with specific sales and, therefore, no direct correlation between
> expenses and sales is possible in any given time period.**  Significant sales
> efforts may be made and significant selling expenses may be incurred in a given
> period in pursuit of a given sale which may or may not result in the
> consummation of that sale. Accordingly, we have no basis upon which to tie
> indirect selling expenses incurred during the POI to post-POI shipments of sales
> made pursuant to a long-term contract during the POI and to include the value of
> the post-POI shipments in the indirect selling expense ratio calculation, as
> suggested by Promarisco in this case; just as there is no basis to exclude the sales
> value of any POI shipments of pre-POI contract sales from that calculation.[27]

Because Commerce and SolarWorld acknowledge, accept, and agree that any debt

restructuring income of a U.S. affiliate that engages only in sales constitutes an element of sales,

then such income may not be treated as *financial* income that might or might not be used to

offset *financial* expenses in the calculation of costs of production.  Instead, such income must be

related to sales and thus included in the calculation of the indirect selling expense ratio.  Any

other conclusion would be contradictory and internally inconsistent, and therefore unsupported

---

[27] *Final Determination of Sales at Less Than Fair Value: Certain Frozen and Canned
Warmwater Shrimp From Ecuador*, 69 Fed. Reg. 76913 (December 23, 2004) (Issues and
Decision Memorandum, Comment 26 – Calculation of Promarisco's Indirect Selling Expense
Ratio) (emphasis added, citations omitted).

17-00199 – Trina's Reply Brief

by substantial evidence.

Unlike the cases cited by Defendant and Defendant-Intervenor, Commerce has a long history of treating indirect selling expenses and income as ***period*** expenses and income that are properly allocable in their entirety to the period of review:

> The Department's standard methodology, however, is to calculate indirect selling expenses based on expenses incurred and sales revenue *recognized* (or cost of goods sold (COGS)) *during the same period of time*.  In other words, the Department considers actual indirect expenses incurred in the numerator of the indirect selling expense ratio, while revenue recognized is included in the ratio's denominator.[28]

In this case, the debt restructuring income was recognized by TUS during the period of review as a period income item, and TUS properly included the gain in its reported income and expenses. As a period income item, there is no basis for excluding any of the income from the calculation of TUS's indirect selling expense ratio, especially when the denominator of the ratio calculation includes all sales during the same period.  Commerce's disallowance of TUS's debt restructuring income as an offset to the indirect selling expense ratio therefore was contrary to law.

### C.   Commerce Should Not Have Included Import Data in Its Calculation of Surrogate Values Where Import Values Were Reported With No Corresponding Import Quantities

Plaintiffs challenge again Commerce's determination to include import data for which no import quantities existed in the calculation of surrogate values based on import data.  Trina raised the same issue in the civil action contesting the final results of the second administrative

---

[28] *Stainless Steel Sheet and Strip in Coils from Mexico; Final Results of Antidumping Duty Administrative Review*, 73 Fed. Reg. 7710 (February 11, 2018) (Issues and Decision Memorandum, Comment 3) (citations omitted) (emphasis added).  *See also Certain Orange Juice from Brazil; Final Results of Antidumping Duty Administrative Review*, 76 Fed. Reg. 50176 (August 12, 2011) (Issues and Decision Memorandum, Comment 6) (Commerce recalculated respondent's indirect selling expense ratio "to include *all indirect selling expenses incurred by the company during the period of review* in the numerator because the denominator is {respondent's} total period of review sales of all products.").

review of the antidumping duty order covering crystalline silicon photovoltaic cells, whether or not assembled into modules, from China.[29]  In *Solarworld Americas, Inc. v. United States*, the Court remanded the issue back to Commerce concluding,

> There may be a reasonable explanation as to why the zero-quantity imports have values that are not within range of low-quantity inputs elsewhere in the database. But Commerce has not provided such an explanation here. Without further explanation, Commerce's assumption that the zero quantities were the result of rounding is not reasonable.

*Solarworld Americas, Inc.*, CIT Slip-Op 17-143, page 34.

In the *Final Results*, Commerce relied on the same conclusion it reached in *Solar Cells AR2*: that zero quantity imports are attributable to rounding small import quantities to zero.[30] But like its decision in *Solar Cells AR2*, Commerce's decision did not provide adequate explanation or reference to facts to support its assumption.

In the *Final Results*, Commerce further explained its decision **not** to exclude import values with zero import quantities from its surrogate value calculations with its conclusion that "there are no imports in the data with a zero value."[31]  But Commerce's conclusions are not based on substantial evidence.  There is no information on the record showing that shipments of "small quantities" or even just shipments of only less than 0.49 kilograms were rounded down to zero.  In fact, it is anyone's guess as to whether the zero quantities represent mistakes, omissions, rounding down of quantities, or something else entirely.  At a minimum, it is reasonable to conclude that importations cannot occur with value but no quantity – even Commerce has not

---

[29] *See Solarworld Americas, Inc. v. United States*, 2017 WL 4844276, CIT Slip Op. 17-143, (Oct 17, 2017), contesting, *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the PRC: Final Results of Antidumping Duty Administrative Review*, 81 Fed. Reg. 39,905 (Dep't Commerce Jun. 20, 2016) ("*Solar Cells AR2*").
[30] *Decision Memorandum*, Comment 3, page 12.

[31] *Id.*

gone so far as to make that assumption – but any other conclusion is speculation, and Commerce determinations may not be based on conjecture.  Commerce claimed that "if the zero quantities were the result of errors, we would expect such errors to also occur with respect to the reported *value* in at least some instances,[32] but Commerce provides no support for this assumption, either.

Trina demonstrated that instances of observations being expressed with zero quantity were far more prevalent than other low quantity observations and, thus, were likely not to be attributable to rounding.[33]  But rather than identify evidence to confront the evidence that Trina presented, Commerce simply stated, "we do not believe this line of reasoning demonstrates that rounding cannot explain the zero quantity imports."[34]

As in *Solar Cells AR2*, the record in this review cannot support a determination that all, or even most, of the zero quantity imports are attributable to rounding.  We recognize that the Court has now upheld Commerce's determination on remand in *Solar Cells AR2* to continue to include import data with zero quantities in its surrogate value calculations in that case. S*olarWorld Americas* v. *United States,* Consol. Court No. 16-00134, Slip Op. 18-53 (May 18,2018) ("*SolarWorld II*").  While we respectfully disagree with the decision in *SolarWorld II*, Trina also maintains that Commerce's determination in *Final Results* remains unsupported by substantial evidence.

Again, even if some of the instances of zero quantity imports are attributable to rounding, excluding those data from the surrogate value calculation would not distort the resulting average calculations because the impact of excluding zero quantities attributable to rounding is negligible

---

[32] *Id.*

[33] Trina's Case Brief, pages 18-19, (Apr. 11, 2017), PR 244, Barcode 3562234-01.

[34] *Decision Memorandum*, Comment 3, page 12.

and therefore does not distort the overall AUV calculated.  In contrast, **including** reported zero quantities and corresponding positive values when the import quantities are not reported for some other (unknown) reason can have a significant impact on the resulting surrogate values calculations.  Therefore, when Commerce calculated surrogate values using import statistics, it should have excluded all instances of zero quantity imports with corresponding values from its calculations.  Commerce's failure to do so resulted in the import data-generated surrogate values used by Commerce to value factors of production not being based on substantial evidence.

## III.    CONCLUSION

For the reasons set forth above, the *Final Results* issued by Commerce in the administrative review involving Certain Crystalline Silicon Photovoltaic Products From the People's Republic of China are not supported by substantial evidence or are contrary to law. Plaintiffs respectfully request that this Court reverse and remand this case to Commerce with instructions to recalculate Trina's margin after making changes necessary (1) to adjust the U.S. selling prices for countervailed export subsidies; (2) to include the debt-restructuring line item in TUS's income statement in the calculation of indirect selling expenses; and (3) to calculate surrogate values that do not rely on import values that have no corresponding import quantities.

Respectfully submitted,

/s/ Robert G. Gosselink
Robert G. Gosselink
Jonathan M. Freed

**TRADE PACIFIC PLLC**
660 Pennsylvania Avenue, SE, Suite 401
Washington, D.C.  20003
(202) 223-3760

Counsel to Plaintiffs Changzhou Trina Solar Energy
Co., Ltd., and Trina Solar (Changzhou) Science
Dated:  July 19, 2018                    and Technology Co., Ltd.