IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| CHANGZHOU TRINA SOLAR ENERGY CO., LTD. *et al.*,<br><br>　　　　Plaintiffs and Consolidated Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>　　　　Defendant,<br><br>and<br><br>SOLARWORLD AMERICAS, INC. and CHANGZHOU TRINA SOLAR ENERGY CO., LTD.,<br><br>　　　　Defendant-Intervenors and Consolidated Defendant-Intervenor. | Consol. Ct. No. 17-00199<br><br>Before: Hon. Claire R. Kelly<br><br>**NON-CONFIDENTIAL VERSION**<br><br>Business Proprietary Information removed from pages 3-5 and 12 |

**REPLY BRIEF OF PLAINTIFF
SOLARWORLD AMERICAS, INC.**

Timothy C. Brightbill, Esq.
Laura El-Sabaawi, Esq.

**WILEY REIN LLP**
1776 K Street, NW
Washington, DC 20006
(202) 719-7000

*Counsel to SolarWorld Americas, Inc.*

July 20, 2018

## TABLE OF CONTENTS

| | | | PAGE |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | ARGUMENT | | 1 |
| | A. | Commerce's Choice of Surrogate Value for Aluminum Frames Should Be Remanded | 1 |
| | B. | Commerce Erred in Valuing Trina's Solar Glass Using Thai HTS 7007.19.900001 | 7 |
| | C. | Commerce's Selection of Styromatic's Financial Statements to Calculate Overhead, Selling, General and Administrative Expenses and Profit Was Unreasonable and Contrary to Law | 9 |
| III. | CONCLUSION | | 13 |

# TABLE OF AUTHORITIES

PAGE(S)

**CASES**

*Jiangsu Jiasheng Photovoltaic Tech. Co., Ltd. v. United States*,
   28 F. Supp. 3d 1317 (Ct. Int'l Trade 2014) ................................................................. 5, 6

**STATUTES**

19 U.S.C. § 3004(c) ............................................................................................................ 3

**ADMINISTRATIVE MATERIALS**

*Certain Crystalline Silicon Photovoltaic Products from the People's Republic of
China*, 82 Fed. Reg. 32,170 (Dep't Commerce July 12, 2017) ............................................. 2

*Certain Steel Nails From the People's Republic of China*, 79 Fed. Reg. 19,316
   (Dep't Commerce Apr. 8, 2014) ...................................................................................... 9

*Wooden Bedroom Furniture from the People's Republic of China*, 73 Fed. Reg.
   49,162 (Dep't Commerce Aug. 20, 2008) ..................................................................... 11

Consol. Ct. No. 17-00199                                                NON-CONFIDENTIAL VERSION

I.  **INTRODUCTION**

On behalf of SolarWorld Americas, Inc. ("SolarWorld"), we respectfully submit the following reply to the June 7, 2018 response briefs filed by Defendant United States and Defendant-Intervenor Changzhou Trina Solar Energy Co., Ltd. ("Trina"). *See* Def.'s Resp. in Opp'n to Pls.' Rule 56.2 Mots. for J. Upon the Agency R. (June 7, 2018), ECF No. 38 ("Def. Resp. Br."); Def.-Intervenor Trina's Resp. to Pl. SolarWorld Americas, Inc.'s Mot. for J. on the Agency R. (June 7, 2018), ECF No. 39 ("Trina Resp. Br.").

II.  **ARGUMENT**

In its Rule 56.2 motion and accompanying brief, SolarWorld challenged three aspects of the final results of the U.S. Department of Commerce ("Commerce") in the first administrative review of the antidumping duty order on *Certain Crystalline Silicon Photovoltaic Products from the People's Republic of China*. *See* Pl. SolarWorld Americas, Inc. Mem. in Supp. of its Rule 56.2 Mot. for J. Upon the Agency R. (Feb. 2, 2018), ECF No. 31 ("SolarWorld 56.2 Br.") at 1-3. Specifically, SolarWorld challenged as unreasonable, unsupported by the record, and otherwise unlawful: (1) Commerce's determination to use Harmonized Tariff Schedule ("HTS") subheading 7604.29 to value Trina's aluminum frames; (2) Commerce's determination to value Trina's solar glass input using HTS number 7007.19.90000; and (3) Commerce's selection of the 2015 financial statement of Styromatic (Thailand) Co., Ltd. ("Styromatic") to calculate Trina's overhead, selling, general and administrative ("SG&A") expenses and profit. Below, SolarWorld explains why Defendant and Defendant-Intervenor have failed to adequately rebut these claims.

    A.  **Commerce's Choice of Surrogate Value for Aluminum Frames Should Be Remanded**

During the review, Trina reported aluminum frames as a production input. Commerce accordingly sought surrogate market-economy data by which to value the frames. SolarWorld

Consol. Ct. No. 17-00199                                           NON-CONFIDENTIAL VERSION

asserted that the frames should be valued based on HTS subheading 7616.99 covering aluminum products not otherwise specified, in accordance with new, detailed information provided by Trina about its input, U.S. Customs & Border Protection ("CBP") rulings and the notes to the HTS. *See, e.g.*, Letter from Wiley Rein LLP to Sec'y Commerce, re: *Certain Crystalline Silicon Photovoltaic Products from the People's Republic of China: Case Brief of Solar World Americas, Inc.* (Apr. 11, 2017), C.R. 232, P.R. 247[1] ("SolarWorld Case Brief") at 17-21. SolarWorld also argued that classification under Heading 7604, covering "bars, rods, or profiles," was not appropriate, because the provision applies only to unfinished articles, and because the frames were not of uniform cross-section, as required by the notes to HTS Chapter 76. *Id.* at 18-19. Commerce, however, determined to value these frames based on HTS 7604. Issues and Decision Memorandum accompanying *Certain Crystalline Silicon Photovoltaic Products from the People's Republic of China*, 82 Fed. Reg. 32,170 (Dep't Commerce July 12, 2017) (final results of antidumping duty admin. rev. and deter. of no shipments; 2014-2016), P.R. 259 ("I&D Memo") at 16-19.

In its opening brief, SolarWorld argued that substantial evidence did not support Commerce's aluminum frames determination and that it was contrary to law. SolarWorld 56.2 Br. at 9-18. In response, Defendant first argues that HTS category 7604 covers non-hollow aluminum profiles, which is how Trina described its aluminum frames. Def. Resp. Br. at 14-15. But Defendant fails to recognize the importance of the notes to HTS Chapter 76, which are binding U.S. law and which state that Heading 7604 is only applicable to products of uniform cross-section. *See* SolarWorld 56.2 Br. at Exhibit 1. The record here demonstrates that Trina's aluminum frames

---

[1]    Documents contained in the administrative record are identified by the name and date of the documents, followed by the confidential ("C.R.") and public ("P.R.") index numbers assigned to these documents in the in the administrative record index that Commerce filed with the Court on September 20, 2017, ECF No. 19.

2

Consol. Ct. No. 17-00199                                                      NON-CONFIDENTIAL VERSION

were <u>not</u> of uniform cross-section and thus cannot fit the statutory definition of 7604. *See* Letter from Trade Pacific PLLC to Sec'y Commerce, re: *Crystalline Silicon Photovoltaic Products from the People's Republic of China: First Supplemental Questionnaire Response* (Aug. 29, 2016), C.R. 167-176, P.R. 159-161 ("Trina's First Supp. Response") at Exhibit 19; Letter from Trade Pacific PLLC to Sec'y Commerce, re: *Crystalline Silicon Photovoltaic Products from the People's Republic of China: Third Supplemental Questionnaire Response* (Jan. 4, 2017), C.R. 182-190, P.R. 176 ("Trina's Third Supp. Response") at Exhibit 6. *See also* 19 U.S.C. § 3004(c); U.S. Customs and Border Protection, What Every Member of the Trade Community Should Know About: Tariff Classification (2004) at 32 ("the legal text of the HTSUS . . . {including} (1) the General Notes . . . ; (2) the General Rules of Interpretation; (3) the Additional U.S. Rules of Interpretation . . . ; (4) all product categories set forth in 22 sections and 99 chapters . . . ; and (5) {certain} appendices . . . are considered to be statutory provisions of law for all purposes").

Trina's aluminum frame solar panel components have been converted from profiles of uniform cross section to an open shape with corners and numerous mechanical features that increase reliability and longevity and ensure quick and simple assembly, and thus can no longer possibly fall within the definition of Heading 7604. Indeed, Trina provided [



] and are not of uniform cross section. *See* Trina's First Supp. Response at Exhibit 19; Trina's Third Supp. Response at Exhibit 6.

Although, as Defendant and Trina argue, Def. Resp. Br. at 12-13 and 16; Trina Resp. Br. at 2, this Court has previously held in appeals involving separate administrative records that

3                       **Business Proprietary Information Has Been Deleted**

Consol. Ct. No. 17-00199                                              **NON-CONFIDENTIAL VERSION**

Commerce reasonably found HTS 7604 to constitute the best available information to value aluminum frames for solar panels, those results did not compel the same choice here, where the record included, among other data, detailed information from Trina regarding the [


]) and on-point CBP rulings and other data showing that aluminum frames for solar panels are not classifiable in 7604.  *See* Trina's First Supp. Response at Exhibit 19; Trina's Third Supp. Response at Exhibit 6.

Notably, information provided by Trina showed that the [



].  That [



].  *See, e.g.*, Trina's First Supp. Response at Exhibit 19; Trina's Third Supp. Response at Exhibit 6.  Trina's [

] also shows that the frames are subjected to [                                  ], including [                                                                    ], and that they have [                                                       ].  Letter from Trade Pacific PLLC to Sec'y Commerce, re: *Crystalline Silicon Photovoltaic Products from the People's Republic of China: Section C and D Questionnaire Response* (July 19, 2016), C.R. 113-148, P.R. 129-131 ("Trina's Section C and D Response") at Exhibits D-13, D-15.

In response to these facts, Defendant states simply that the characteristics of Trina's aluminum frames – such as corners, [                          ] – do not preclude total uniformity of the cross-section. Def. Resp. Br. at 14.  Without further explanation, Defendant merely re-states Commerce's unsupported finding below that while certain frames contain corners, "{Commerce}

4                                      **Business Proprietary Information Has Been Deleted**

Consol. Ct. No. 17-00199                                              NON-CONFIDENTIAL VERSION

does not believe that this would *necessarily* change their classification as aluminum profiles." *Id.* (citing I&D Memo at 17). *See also* Trina Resp. Br. at 3. This is fundamentally wrong in two ways. First, it fails to address the fact that these frames all have, in addition to corners, [

]. Second, and as a result, the government's argument contradicts the HTS notes and therefore the statute, because the frames are not of uniform cross-section along their whole length, as defined by the HTS. Indeed, the definition in the HTS itself clearly <u>requires</u> "profiles" to have a uniform cross section, rendering Commerce's unsupported "belief" to the contrary unlawful.

Defendant further cites Commerce's finding that HTS 7604 is not necessarily limited to unfinished aluminum profiles. Def. Resp. Br. at 15. On this point, Defendant states that "Commerce found that further processing, by itself, does not foreclose using HTS category 7604.29.90001, which is consistent with the parameters for Note 1(b) to HTS Chapter 76." *Id.* (citing I&D Memo at 16). Defendant claims that, therefore, "there is no record evidence demonstrating that the further processing identified by SolarWorld *requires* the inference that Trina's aluminum frames have assumed the character of articles or products of another heading." *Id.* But Defendant again fails to acknowledge that, in addition to being further processed, the frames do not meet the specific definition in HTS 7604, which, as stated above, defines profiles as having a uniform cross-section that Trina's frames do not have.

Moreover, as this Court previously explained, "HTS category 7604" includes "aluminum bars, rods, and profiles" and "products that 'have been subsequently worked after production . . . <u>provided that they have not thereby assumed the character of articles or products of other headings</u>.'" *Jiangsu Jiasheng Photovoltaic Tech. Co. v. United States*, 28 F. Supp. 3d 1317, 1337 (Ct. Int'l Trade 2014) (emphasis added). The evidence on the record shows that Trina's aluminum

5

**Business Proprietary Information Has Been Deleted**

Case 1:17-cv-00199-CRK   Document 46   Filed 07/20/18   Page 9 of 17

Consol. Ct. No. 17-00199                                    NON-CONFIDENTIAL VERSION

frames are fabricated products that have been further manufactured into a finished and final form. The specific record evidence demonstrates that the goods require no further processing and no further manufacturing – they are ready for immediate incorporation into a solar module. The frames are therefore more than mere "profiles" and have "assumed the character of articles or products of other headings." The CBP rulings on the record regarding Heading 7604 show that CBP does not classify goods of this type in 7604, as CBP does not classify finished, "ready to use" goods, such as frames for solar panels, in 7604. As such, HTS 7604 was inaccurate for valuation of the frames.

Defendant next argues that Commerce was not bound by CBP rulings when selecting among import values from surrogate countries. Def. Resp. Br. at 16-18. While SolarWorld acknowledges that Commerce is not required to follow Customs classification rulings in every case, see *Jiangsu Jiasheng*, 28 F. Supp. 3d at 1336, Commerce also cannot disregard extraordinarily relevant record evidence – in this case, CBP rulings on the exact merchandise in question. The evidence included a CBP ruling (N139353) that specifically classified aluminum frames for solar panels under HTS 7616. Letter from Wiley Rein LLP to Sec'y Commerce, re: *Certain Crystalline Silicon Photovoltaic Products from the People's Republic of China: Submission of Surrogate Values* (Aug. 15, 2016), C.R. 151-164, P.R. 144-151 ("SolarWorld Surrogate Value Submission") at Exhibit 13 (CBP Ruling N139353 (Jan. 13, 2011)) . Given the extraordinary relevance of this CBP ruling – on the exact merchandise in question – it was unreasonable for Commerce to conclude that HTS 7604 was the best available information with which to value frames.

Finally, Defendant states that HTS 7616.99, as proposed by SolarWorld, was not appropriate because it "is an 'other' category, which would only contain articles of aluminum not

Consol. Ct. No. 17-00199　　　　　　　　　　　　　　　　　NON-CONFIDENTIAL VERSION

already identified elsewhere in the HTS." Def. Resp. Br. at 17 (citing I&D Memo at 18). But the evidence showed that this is the category that in fact contains aluminum frames for solar panels. While it may contain other products as well, *see id.*, the category that also contains the exact merchandise would be more representative of a category that does not contain the merchandise at all (*e.g.*, HTS 7604).

As such, Commerce's determination to value aluminum frames using Heading 7604 was contrary to law (including the binding HTS), inadequately explained and unreasonable. Commerce's use of HTS 7604 has substantially undervalued this input for years, inappropriately reducing respondents' dumping margins on sophisticated, high-tech products. SolarWorld therefore submits that this issue should be remanded for further consideration.

### B. Commerce Erred in Valuing Trina's Solar Glass Using Thai HTS 7007.19.900001

In the final results, Commerce valued Trina's solar glass, *i.e.*, both coated and tempered glass, using Thai imports of tempered glass classified under HTS category 7007.19.9000. I&D Memo at 28-29. This HTS category, which covers tempered glass, fails to account for the additional surface treatments imparted to the glass used in Trina's modules and thus cannot be the "best available information" to value Trina's input.

Defendant argues that HTS category 7007.19.9000 was the appropriate selection to value Trina's module glass input because "an examination of record information and Trina's own descriptions indicate that Trina's module glass is frequently described as tempered." Def. Resp. Br. at 18 (quoting I&D Memo at 29). Defendant then cites Trina's data sheets for its solar modules, which describe the front glass as tempered. *Id.* at 18-19.

That Trina uses tempered glass is not in dispute. However, this is insufficient to justify Commerce's surrogate value selection. Record evidence demonstrates that the glass Trina uses is

7

Case 1:17-cv-00199-CRK   Document 46   Filed 07/20/18   Page 11 of 17

Consol. Ct. No. 17-00199                                    NON-CONFIDENTIAL VERSION

tempered glass that is further worked to ensure that it is durable, safe and able to withstand the elements. For example, the very data sheet cited by Defendant notes that Trina's solar glass is "3.2 mm (0.13 inches), High Transmission, AR *Coated* Tempered Glass." *See* Trina's Third Supp. Response at SuppQ3-2; Def. Resp. Br. at 19 (emphasis added). Commerce also placed on the record information from other module suppliers, indicating that their glass is "high-transparency tempered glass with an *antireflection surface treatment*. . . . Modules are strenuously tested for weight loading and impact resistance, and the *front glazing* of a module is extremely durable." Trina's Third Supp. Response at SuppQ3-2 (emphasis added). Trina confirmed that there is no "significant difference" between the glass listed in Trina's specification sheet, that used in the production of subject merchandise, and these glass specifications from other module suppliers. *Id.* at SuppQ3-3. Record evidence thus shows that in addition to being tempered, Trina's solar module glass also undergoes additional processing with respect to glazing and/or anti-reflective surface treatments that are intended to impart extreme durability to the glass. It is crucial that the selected surrogate value reflect these important additional processing steps.

Defendant notes that Commerce considered SolarWorld's claims regarding these further surface treatments to the glass and rejected them, because SolarWorld's proffered HTS number for laminated glass, HTS category 7007.29.90, refers to glass that is composed of multiple layers of plastic and glass. Def. Resp. Br. at 19. *See also* Trina Resp. Br. at 5. While Trina's glass may not be layered, Thai HTS number 7007.29.90 is the only HTS number that reflects the type of surface treatments imparted to Trina's solar glass that is necessary to ensure its "extreme durability." By valuing this coated glass using 7007.19.90 rather than the HTS number that accounts for the additional processing involved in surface treatments, Commerce substantially

8

Case 1:17-cv-00199-CRK   Document 46   Filed 07/20/18   Page 12 of 17

Consol. Ct. No. 17-00199                                          NON-CONFIDENTIAL VERSION

undervalued this input, resulting in an inaccurate margin, and neither Defendant nor Trina can provide adequate justification for this critical error.

### C. Commerce's Selection of Styromatic's Financial Statements to Calculate Overhead, Selling, General and Administrative Expenses and Profit Was Unreasonable and Contrary to Law

As described in SolarWorld's opening brief, Commerce erred in relying on the 2015 financial statement of Styromatic, rather than that of Ekarat Engineering (Public) Co., Ltd ("Ekarat"), to calculate Trina's overhead, SG&A expenses and profit. *See* SolarWorld 56.2 Br. at 20-26. *See also* I&D Memo at 35-39.

Defendant argues that, despite Styromatic's receipt of countervailable subsidies, Commerce was correct to rely on Styromatic's financial statement because it is a producer of comparable merchandise, while "SolarWorld's preferred alternative (Ekarat) is not a significant producer of comparable merchandise." Def. Resp. Br. at 21. In fact, however, Ekarat is a significant producer of *identical* merchandise. *See* Issues and Decision Memorandum accompanying *Certain Steel Nails From the People's Republic of China*, 79 Fed. Reg. 19,316 (Dep't Commerce Apr. 8, 2014) (final results of the fourth antidumping duty admin. rev.) at 9-10 ("there is no need to consider using a company that makes only comparable merchandise when there are usable financial statements on the record from companies that produce identical merchandise"). Defendant acknowledges that Ekarat has manufactured cells and modules and that it had the capacity to do so in 2015. *See* Def. Resp. Br. at 21. Indeed, Ekarat's financial statement states:

> The Company is the <u>manufacturer of Solar Module</u> with the capacity of 12 Megawatt per year. The <u>Company can also produce Solar Cell</u> with the capacity of 30 Megawatt per year for the usage as raw material for Solar Module assembly and for sell as the merchandise both local market and foreign market.

9

Case 1:17-cv-00199-CRK   Document 46   Filed 07/20/18   Page 13 of 17

Consol. Ct. No. 17-00199                                          NON-CONFIDENTIAL VERSION

*See* SolarWorld Surrogate Value Submission at Exhibit 10, p. 11 (emphasis added). *See also id.* at Exhibit 10, pp. 13 and 88.

However, Defendant argues that "the vast majority of Ekarat's revenue in 2015 came from sales of non-comparable merchandise," *i.e.*, transformers. Def. Resp. Br. at 21-22. While Ekarat may have earned revenue from distribution transformers, the fact remains that Ekarat is the only Thai manufacturer of solar cells and modules for which financial statements were on the record. Commerce disregarded the importance of Ekarat's status as a solar manufacturer, such as the investments it has made into solar cell and module manufacturing equipment, which would be reflected in its financial statement. For example, Defendant ignores that Ekarat's assets for solar cell manufacturing in 2015, which totaled 646.31 million Baht, were significantly higher than its assets for transformer sales and services (284.73 million Baht), and electricity (122.59 million Baht). SolarWorld Surrogate Value Submission at Exhibit 10, p. 113. Defendant also fails to note that Ekarat's financial statement describes cash flow information related to solar cell manufacturing:

> In the separate financial statements as at December 31, 2015 and 2014, the Company transferred other raw materials and solar cell to be construction in progress amount of Baht 2.12 million and Baht 1.61 million respectively. In 2014 transferred construction in progress to be inventories amount of Baht 1.05 million.

*Id.* at Exhibit 10, p. 88. Thus, Ekarat's status as a solar cell and module manufacturer was reflected in its financial statement, making its financials the best available information to value Trina's financial ratios.

Next, Defendant erroneously claims, without support, that Ekarat Solar Co. Ltd. "had an operating loss in 2015."[2] Def. Resp. Br. at 22-23. Nowhere does the financial statement support

---

[2] In addition, while Commerce seems to imply that Ekarat Solar is the entity engaged in solar cell and module manufacturing, *see* I&D Memo at 37, the record does not support this assertion.

Case 1:17-cv-00199-CRK   Document 46   Filed 07/20/18   Page 14 of 17

Consol. Ct. No. 17-00199                                                NON-CONFIDENTIAL VERSION

this statement. Ekarat Solar is referenced separately on pages 16-17, 93, 110, and 111, and none of these pages indicate that the subsidiary was operating at a loss. *See* SolarWorld Surrogate Value Submission at Exhibit 10. Moreover, in determining a company's operating status, Commerce normally relies on the profit before tax figure in the income statement. *See* Issues and Decision Memorandum accompanying *Wooden Bedroom Furniture from the People's Republic of China*, 73 Fed. Reg. 49,162 (Dep't Commerce Aug. 20, 2008) (final results of antidumping admin. rev. and new shipper rev.) at 14 (explaining that "it is {Commerce's} practice to use only financial statements from surrogate companies that have a profit before tax"). Here, both the consolidated financial statement and the separate financial statement show sizable profits in 2015 of more than 155 million Baht. SolarWorld Surrogate Value Submission at Exhibit 10, p. 66. Defendant's reliance on Commerce's claim that the Ekarat Solar was operating at a loss, therefore, is misplaced and unsupported by record evidence.

Finally, Defendant fails to address SolarWorld's argument that Ekarat's business structure and profit experience as reflected in its 2015 consolidated financial statement best correlate to Trina's structure and financial experience. *See* SolarWorld 56.2 Br. at 23-24. As SolarWorld explained to Commerce, Trina is composed of several affiliated entities that produced subject merchandise during the period of review, one of which had subject sales to the United States – Changzhou Trina Solar Energy Co., Ltd. ("TCZ") – as well as a U.S. affiliate, Trina Solar (U.S.), Inc. ("TUS"). *See* Letter from Trade Pacific PLLC to Sec'y Commerce, re: *Certain Crystalline Silicon Photovoltaic Products from the People's Republic of China: Section A Questionnaire Response* (June 24, 2016), C.R. 34-111, P.R. 107-121 ("Trina's June 24, 2016 AQR") at A-1, A-

---

The financial statement clearly identifies Ekarat Solar Co. Ltd. as a "Distributor of solar cell." SolarWorld Surrogate Value Submission at Exhibit 10, p. 109.

Consol. Ct. No. 17-00199                                               **NON-CONFIDENTIAL VERSION**

21; Trina's Section C and D Response at D-13 – D-14. These entities are [

]. Trina's June 24, 2016 AQR at Exhibit A-4. Within the [


]. *Id.* at A-3 – A-5, A-13, and Exhibits A-3 – A-4, A-9. In addition, as evidenced by TCZ and Trina Solar (Changzhou) Science & Technology Co., Ltd.'s ("TST") financial statements, [

]. *Id.* at Exhibit A-17. Given the nature of respondent's business operations, the profit and financial experience is clearly best captured at the consolidated level – as reflected in Ekarat's 2015 consolidated financial statement.

In sum, Commerce erred in selecting the financial statement of Styromatic instead of the financial statement of Ekarat to value Trina's financial ratios, and Defendant's arguments in response are unavailing.

12

**Business Proprietary Information Has Been Deleted**

Consol. Ct. No. 17-00199 **NON-CONFIDENTIAL VERSION**

## III. CONCLUSION

For the foregoing reasons and those described in its opening brief, SolarWorld requests that the Court find the following determinations by Commerce to be unsupported by substantial evidence and/or otherwise contrary to law: (1) the selection of an aluminum frames surrogate value; (2) the selection of a solar glass surrogate value; and (3) the selection of a surrogate financial statement. SolarWorld respectfully requests that the Court remand these aspects of Commerce's determination for further consideration.

                                      Respectfully submitted,

                                      /s/ Timothy C. Brightbill, Esq.
                                      Timothy C. Brightbill, Esq.
                                      Laura El-Sabaawi, Esq.

                                      **WILEY REIN LLP**
                                      1776 K Street, NW
                                      Washington, DC 20006
                                      (202) 719-7000

July 20, 2018                                   *Counsel to SolarWorld Americas, Inc.*

## CERTIFICATE OF COMPLIANCE

Pursuant to Chambers Procedure 2(B)(1), the undersigned certifies that this brief complies with the word limitation requirement. The word count for the Reply Brief of Plaintiff SolarWorld Americas, Inc., as computed by Wiley Rein LLP's word processing system (Microsoft Word 2016), is 3,661 words.

                /s/ Timothy C. Brightbill
                    (Signature of Attorney)

                Timothy C. Brightbill, Esq.
                    (Name of Attorney)

                SolarWorld Americas, Inc.
                    (Representative of)

                July 19, 2018
                    (Date)