**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE:  THE HONORABLE CLAIRE R. KELLY, JUDGE

| | |
|---|---|
| CHANGZHOU TRINA SOLAR ENERGY CO., <br><br>  Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br>  Defendant, <br><br>  and <br><br> SOLARWORLD AMERICAS, INC., <br><br>  Defendant-Intervenor. | Court No. 17-00199 |

**DEFENDANT'S SUPPLEMENTAL BRIEF**

JOSEPH H. HUNT
Assistant Attorney General

JEANNE E. DAVIDSON
Director

REGINALD T. BLADES, JR.
Assistant Director

OF COUNSEL:
JAMES HENRY AHRENS II
Attorney
Office of the Chief Counsel
  for Trade Enforcement and Compliance
U.S. Department of Commerce

JUSTIN R. MILLER
Senior Trial Counsel
U.S. Dept. of Justice, Civil Division
International Trade Field Office
26 Federal Plaza, Rm. 346
New York, NY 10278
Tel. (212) 264-9241
Fax (212) 264-1916

October 30, 2018

Attorneys for Defendant

Pursuant to this Court's order at oral argument held on October 16, 2018, defendant, the United States, respectfully submits this supplemental brief to augment our June 7, 2018 brief in opposition to the motions for judgment on the agency record filed by plaintiff Changzhou Trina Solar Energy Co., Ltd. (Trina) and defendant-intervenor SolarWorld Americas, Inc.  The Court directed the United States to explain why the decision of the Department of Commerce (Commerce) not to increase Trina's U.S. price by the amount of countervailing duties determined in the companion countervailing duty proceeding pertaining to the Export Buyer's Credit Program does not result in a "double remedy."

## ARGUMENT

The antidumping statute provides that "{t}he price used to establish export price and constructed export price shall be . . . increased by . . . the amount of any countervailing duty imposed on the subject merchandise under part I of this subtitle to offset an export subsidy . . . ." 19 U.S.C. § 1677a(c)(1)(C).  The statute defines an "export subsidy" as "a subsidy that is, in law or in fact, contingent upon export performance, alone or as 1 of 2 or more conditions."  19 U.S.C. §1677(5A)(B).  Thus, when Commerce determines that a subsidy is contingent upon export performance, Commerce must increase the U.S. price determined in a companion antidumping proceeding by the amount of any countervailing duty imposed on the subject merchandise as a result of this finding.  *See* 19 U.S.C. § 1677a(c)(1)(C).

In this case, Commerce determined that it would not be appropriate to increase Trina's U.S. price by the amount of countervailing duties determined for Export Buyer's Credit Program because, in the companion countervailing duty proceeding, Commerce did not make a finding that the Export Buyer's Credit Program was export contingent.  *See generally Crystalline Silicon Photovoltaic Products from the People's Republic of China*, 82 Fed. Reg. 32,170 (Dep't

Commerce July 12, 2017) (final results 1st admin. review) (*Final Results*), and accompanying Issues and Decision Memorandum (IDM) at 9-10.  Instead, because the Government of China refused to cooperate with Commerce's inquiries as to the use and operation of the Export Buyer's Credit Program, Commerce determined, in accordance with 19 U.S.C. § 1677e(a)-(b), to rely on facts otherwise available and to use an adverse inference in selecting from among the facts otherwise available (AFA) in evaluating the program.  *Crystalline Silicon Photovoltaic Products From the People's Republic of China*, 79 Fed. Reg. 76,962 (Dep't of Commerce Dec. 23, 2014) (final affirm. countervailing duty determ.), and accompanying Issues and Decision Memorandum (CVD Investigation IDM) at 15-16, 30, 89-94, as amended by 80 Fed. Reg. 8,592 (Dep't of Commerce Feb. 18, 2015).

>  Commerce articulated its determination in the CVD investigation as follows:
>
>> {P}ursuant to section 776(b) of the Act, we find that the GOC failed to cooperate by not acting to the best of its ability, because it refused to allow {Commerce} to examine the source of information that it placed on the record regarding this issue. Accordingly, an adverse inference is warranted.  As adverse facts available, we find, as discussed below under Comment 16, that both Trina Solar and Wuxi Suntech benefited from this program at the rate of 10.54 percent *ad valorem*, ….

CVD Investigation IDM at 15-16, *see also* pp. 30, 89-94.

Because Commerce did not make a finding that the Export Buyer's Credit Program is an export subsidy in the countervailing duty investigation, Commerce did not increase the U.S. price when calculating the dumping margin for the *Final Results* in this proceeding.  IDM at 9-10.  This determination reasonably construes 19 U.S.C. § 1677a(c)(1)(C).

The statute instructs Commerce to increase U.S. price *only when* the amount of countervailing duty at issue is "imposed … to offset an export subsidy."  19 U.S.C. § 1677a(c)(1)(C).  The purpose of this provision is to avoid imposing a "double remedy" across

2

companion antidumping and countervailing duty proceedings. Although 19 U.S.C. § 1677a(c)(1)(C) requires in antidumping duty proceedings a full adjustment for countervailing duties imposed to offset an export subsidy, the legislative history provides no basis for concluding that Congress's action was based upon any specific assumptions about the pass-through of subsidies into export prices other than a seeming recognition that export subsidies could affect price comparability for dumping purposes (presumably by lowering the export price), whereas non-export subsidies presumably would affect the price of the merchandise sold in both markets equally. *See*, *e.g.*, Senate Report on the Trade Agreements Act of 1979, S. Rep. No. 96-249 (1979), at 94.

This difference does not mean, however, that Congress assumed that 100 percent of export subsidies automatically pass through into United States prices or that 100 percent of non-export subsidies automatically pass through into the prices in both the home and United States markets. In enacting 19 U.S.C. § 1677a(c)(1)(C), Congress may have simply recognized the complexity of the issues that would need to be resolved to provide anything less than a complete offset, and simply opted for a full offset for export subsidies to avoid those potential problems. Regardless, to expand this adjustment to subsidies that are not found by Commerce to be export subsidies would be to alter the methodological basis of this provision, address a circumstance that Congress did not intend for Commerce to address, and reduce the remedy available to users of the antidumping duty law.

During the oral argument, the Court posed the following hypothetical:

> {I}f I give a company $100, either because I just give it to that one company and it's going to be treated as a specific subsidy, or because I give it to that company and say export it, U.S. law remedies that in its countervailing duty statute. Right? So, an additional tariff is placed upon those goods to offset the value of that $100. How can it then ever come in on the dumping side of

3

> the same case? Because you've already remedied the $100. I don't understand how you get to remedy it twice. Right?

Transcript at 18-19, October 16, 2018, oral argument.

Notwithstanding whether Congress's action was based upon any specific assumptions about the pass-through of subsidies into export prices, we provide the Court with the following hypothetical to speak to the Court's question. First, let us assume that the normal value of sales of certain widgets in China is $200, and that the export price of these widgets in the United States is $150. If we analyze this hypothetical situation solely from the perspective of dumping, the United States should assess $50 in antidumping duties to remedy the improper dumping that is occurring in the United States.

Now, let us assume that China provides an export subsidy of $100 per unit produced/exported on top of these facts. To remedy this improper export subsidy, the United States would impose $100 in countervailing duties. Separately, the United States must also assess antidumping duties to account for the dumping that is still occurring. To determine the dumping margin in this circumstance, let us assume that this export subsidy completely passes through into the export price, which would decrease the export price to $50. Pursuant to 19 U.S.C. § 1677a(c)(1)(C), the United States must increase the export price by $100—*i.e.* "the amount of any countervailing duty imposed … to offset an export subsidy." If the United States did not offset the U.S. price as directed by the statute, the dumping margin would be $150 and provide $100 in "double remedy." After adjusting for the export subsidy in this hypothetical, the dumping margin would be $50, which as reflected above, is the proper amount of antidumping duties that should be imposed to remedy the improper dumping.

Next, let us alter the hypothetical by assuming that the $100 is a non-export countervailable subsidy for each unit produced. To remedy this improper non-export subsidy,

the United States would impose $100 in countervailing duties. Separately, the United States must also assess antidumping duties to account for the dumping that is still occurring. To determine the dumping margin in this circumstance, let us assume that the entire amount of this subsidy passes through not only into export price, but also into domestic prices in China, *i.e.*, normal value, because the non-export subsidy presumably would have a symmetrical effect in both markets. Normal value would decrease to $100, and export price would decrease to $50. To properly determine the dumping margin in this circumstance, there is no reason to increase the export price by the amount of the subsidy—$100. Without any adjustment, the dumping margin remains $50, which, as reflected above, is the proper amount of duties that should be imposed to remedy the dumping that is occurring.

Under both hypothetical scenarios—an export subsidy versus a non-export subsidy— the combined antidumping and countervailing duty liability is $150. Therefore, even though the United States does not offset export price by the countervailing duties in the circumstance involving a non-export subsidy, there is no concern that a double remedy may exist. The duty liability is the same in either scenario and reflects the reasonableness of Commerce's interpretation and application of the statute.

In the companion countervailing duty proceeding, Commerce relied on AFA to determine that the respondents to the proceeding received countervailable subsidies from the Export Buyer's Credit Program, but Commerce did not predicate this determination on a finding that the Export Buyer's Credit Program provides an export subsidy within the meaning of 19 U.S.C. § 1677(5A)(B). CVD Investigation IDM at 15-16, 30, 89-94. The availability of subsidies under this program may or may not be contingent upon export performance. Commerce was unable to reach a determination one way or another in the companion

countervailing duty proceeding because the Government of China refused to cooperate in that proceeding, and Commerce thus relied on AFA in determining countervailability.  *Id.*

During the oral argument, the Court expressed difficulty reconciling Commerce's treatment of the program during the antidumping investigation as compared to its treatment of the program during this administrative review of the antidumping order.  As part of the antidumping duty investigation, in interpreting 19 U.S.C. § 1677a(c)(1)(C), Commerce viewed its determination to impose a countervailing duty for the Export Buyer's Credit Program as implicitly reflecting a determination that the Export Buyer's Credit Program qualified as an export subsidy.  *Certain Crystalline Silicon Photovoltaic Products From the People's Republic of China*, 79 Fed. Reg. 76,970 (Dep't of Commerce Dec. 23, 2014) (final antidumping duty determ.), and accompanying Issues and Decision Memorandum at 37-39 ("Therefore, for the final determination, {Commerce} will offset the AD cash deposit rate by the export subsidy rate calculated in the concurrent CVD investigation.").

Upon further reflection after issuing its determination in the antidumping investigation, Commerce determined that this construction of the statute was not well taken as applied to Commerce's determination in the companion CVD investigation.  Commerce reconsidered its views and found that "{Commerce} did not make a determination in the CVD investigation … that the Export Buyer's Credits Program was an export subsidy."  IDM at 9-10.  This view of the program is consistent with Commerce's current practice.  IDM at 10 (citing *Stainless Steel Sheet and Strip from China*, 81 Fed. Reg. 64,135 (Dep't Commerce Sept. 19, 2016) (prelim. dumping determ.), and accompanying Preliminary Decision Memorandum at 19, unchanged in *Stainless Steel Sheet and Strip from China*, 82 Fed. Reg. 9,716 (Dep't Commerce Feb. 8, 2017) (final dumping determ.); *Circular Welded Pipe from Pakistan*, 81 Fed. Reg. 36,876 (Dep't Commerce

June 8, 2016) (prelim. dumping determ.), and accompanying Preliminary Decision Memorandum at 13, unchanged in *Circular Welded Pipe from Pakistan*, 81 Fed. Reg. 75,028 (Dep't Commerce Oct. 28, 2016) (final dumping determ.).

Commerce's decision not to increase Trina's U.S. price by the amount of countervailing duties determined in the companion CVD proceeding involving the Export Buyer's Credit Program implicates a reasonable interpretation of the statute. *See United States v. Eurodif S. A.*, 555 U.S. 305, 316 (2009) ("{Commerce's} interpretation governs in the absence of unambiguous statutory language to the contrary or unreasonable resolution of language that is ambiguous." (citations omitted)); *see also Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Services*, 545 U.S. 967, 981 (2005) (explaining that an agency's departure from its prior interpretation of a statute "is not a basis for declining to analyze the agency's interpretation under the *Chevron* framework"). Commerce's prior treatment of the program does not detract from the reasonableness of its current view of the program given the record of the administrative review.

                              Respectfully Submitted,

                              JOSEPH H. HUNT
                              Acting Assistant Attorney General

                              JEANNE E. DAVIDSON
                              Director

                              /s/ Reginald T. Blades, Jr.
                    By:  REGINALD T. BLADES, JR.
                              Assistant Director

| OF COUNSEL | /s/ Justin R. Miller |
| --- | --- |
| JAMES HENRY AHRENS II | JUSTIN R. MILLER |
| Attorney | Senior Trial Counsel |
| Office of the Chief Counsel | Department of Justice, Civil Division |
|    For Trade Enforcement & Compliance | Commercial Litigation Branch |
| United States Department of Commerce | 26 Federal Plaza – Suite 346 |
| | New York, New York 10278 |
| October 30, 2018 | Attorneys for Defendant |