## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| CHANGZHOU TRINA SOLAR ENERGY CO. LTD., ET AL., | ) ) ) |
|     Plaintiffs and Consolidated Plaintiff, | ) ) ) ) |
| v. | ) ) |
| UNITED STATES, | ) Before: Claire R. Kelly, Judge ) |
|     Defendant, | ) Consol. Court No. 17-00199 ) |
| and | ) ) |
| SOLARWORLD AMERICAS, INC. and CHANGZHOU TRINA SOLAR ENERGY CO., LTD., | ) ) ) ) |
|     Defendant-Intervenor and Consolidated Defendant-Intervenor. | ) ) ) |

**PLAINTIFF TRINA'S RESPONSE TO DEFENDANT'S SUPPLEMENTAL BRIEF**

Robert G. Gosselink
Jonathan M. Freed
**TRADE PACIFIC PLLC**
660 Pennsylvania Avenue, SE, Suite 401
Washington, D.C.  20002
(202) 223-3760

Counsel to Plaintiffs Changzhou Trina Solar Energy Co., Ltd.; Trina Solar (Changzhou) Science and Technology Co., Ltd.; and Trina Solar (U.S.) Inc.

Dated:  November 30, 2018

**PLAINTIFF TRINA'S RESPONSE TO DEFENDANT'S SUPPLEMENTAL BRIEF**

I.     **INTRODUCTION**

Pursuant to this Court's order at oral argument held on October 16, 2018, defendant, the United States, submitted a supplemental brief to explain why the decision of the Department of Commerce (Commerce) not to increase Trina's U.S. price by the amount of countervailing duties determined in the companion countervailing duty proceeding pertaining to the Export Buyer's Credit Program does not result in a "double remedy". *See Defendant's Supplemental Brief*, (Oct 30, 2018). Pursuant to the Court's order on November 9, 2018, response to supplemental briefs are due by November 30, 2018. Thus, this response is timely filed.

II.     **The Legislative History Discussed in Defendant's Supplemental Brief Supports the Opposition Conclusion than that Proffered by Defendant**

Where goods are subject to both antidumping duties and countervailing duties, the statute instructs that, "the price used to establish export price and constructed export price **shall be**—(1) increased by…..(C) the amount of any countervailing duty imposed on the subject merchandise under part I of this subtitle to offset an export subsidy,…". *See* 19 U.S.C. §1677a(c)(1)(C). The legislative history of this section of the statute supports Trina's position that an adjustment to the export price or constructed export price was statutorily required.

In *Defendant's Supplemental Brief*, Defendant cites the legislative history to §1677a(c)(1)(C) asserting that the legislative history

> provides no basis for concluding that Congress's action was based upon any specific assumptions about the passthrough of subsidies into export prices other than a seeming recognition that export subsidies could affect price comparability for dumping purposes (presumably by lowering the export price), whereas non-export subsidies presumably would affect the price of the merchandise sold in both markets equally.

*Defendant Supplemental Brief*, at 3, *citing* Senate Report on the Trade Agreements Act of 1979,

S. Rep. No. 96-249 (1979), at 94.

As an initial matter, the extent to which a subsidy passes through to an export price was not relevant to why Congress determined that export prices in the antidumping calculation should be increased by any countervailed export subsidies. Prior to the change in the statute, the law required additions to the U.S. sale price used to determine the antidumping rates "for the rebate or noncollection of a tax determined to be a bounty or grant under U.S. countervailing duty law." *See Senate Report on the Trade Agreements Act of 1979*, S. Rep. No. 96-249 (1979), at 93. The change in law was that "the addition for countervailing duties assessed on the same merchandise to offset subsidies is clarified to apply only to subsidies which are classified as export subsidies." *Id.*

The amendment to the statute, that limited the upward adjustment to the U.S. sale price in the antidumping calculation only to export subsidies, was made because,

> such adjustment is made only to the extent that the exported merchandise, and not the other production of the foreign manufacturer…benefits from a particular subsidy. The principal behind adjustments to the price paid in these instances is to achieve comparability between the price which are being compared. Where the situation is the same, *e.g.*, both the merchandise examined for the purpose of determining "purchase price" and such or similar merchandise examined for the purpose of the determining "foreign market value" benefit from the same subsidy, then no adjustment is appropriate.

*Senate Report on the Trade Agreements Act of 1979*, S. Rep. No. 96-249 (1979), at 94.

So, the legislative history makes clear that the rationale for limiting the upward adjustment to the export price[1] or the constructed export price[2] only for export subsidies is

---

[1] *See* 19 U.S.C. §1677a(a).

[2] *See* 19 U.S.C. §1677a(b).

because the comparison home market sales that are used to determine normal value[3] do not benefit from the export subsidy.   Stated differently, no adjustment to avoid a double remedy is needed where both prices being compared to measure dumping benefit from the same subsidy. *See Senate Report on the Trade Agreements Act of 1979*, S. Rep. No. 96-249 (1979), at 94.

But in the non-market economy context, normal value is determined under 19 U.S.C. §1677b(c) using the factor of production method and not under 19 U.S.C. §1677b(a) using the comparison market sales information.  So, in a market-economy context **none** of the normal values against which the export price or constructed export price are compared benefit from the same subsidy that the export price or constructed export price benefit from.  In fact, Commerce's practice endeavors to ensure that the values used to determine normal value do not benefit from countervailable subsidies.[4]   Thus, the legislative history further supports Trina's position that the without the adjustment to the constructed export price, Commerce is applying a double-remedy.

II.  **Defendant's Hypothetical Calculations of Scenarios Involving Export Subsidies and Non-Export Subsidies Are Flawed**

In *Defendant's Supplemental Brief*, Defendant provides two hypothetical calculations –

---

[3] *See* 19 U.S.C. §1677b(a)(1).

[4] *See e.g.*, *Final Results of Antidumping Duty Administrative Review and New Shipper Review of Freshwater Crawfish Tail Meat from the People's Republic of China; 2014-2015*, 82 Fed. Reg. 17634 (April 12, 2017), Issues and Decision Memorandum, Comment 1, available at https://enforcement.trade.gov/frn/summary/prc/2017-07363-1.pdf,  (explaining, "our practice is not to rely on financial statements where there is evidence that the company received countervailable export subsidies…this practice also heeds Congress's direction that the Department, "avoid using any prices which it has reason to believe or suspect may be dumped or subsidized," when valuing factors of production in cases involving non-market economies, *citing*, *Omnibus Trade and Competitiveness Act of 1988*, Conference Report to Accompany H.R.3, H.R. Rep. No. 576, 100th Cong., 2nd Sess., at 590-91 (1988), *as reprinted in* 1988 U.S.C.C.A.N. 1547, 1623.

3

one provides an adjustment to the U.S. price for an export subsidy and one provides no upward adjustment. *See Defendant's Supplemental Brief*, pages 4-5. Defendant made several errors in their calculation that render their conclusions unavailing.

First, Defendant assumes that "the normal values of sales of certain widgets in China is $200." *Id.*, at 4. As addressed in the previous section, in non-market economy cases the normal values are not based on sales in the home market, they are based on factors of production and surrogate values. So, Defendant's hypotheticals are irrelevant to the case underlying this appeal because the hypotheticals assume that the normal value could have benefited from the non-export subsidies. Thus, these hypotheticals are not analogous to our case.

Second, the Defendant made errors in their hypothetical by suggesting that an export subsidy of $100 would decrease the export price to $50. *Id*. This is incorrect. An export subsidy of $100 would enable an exporter to sell at a price $100 less than what they might otherwise would have sold. So, if they exported at a price of $150 and received a $100 export subsidy, the price without the export subsidy would have been $250 per unit. So, if the export price reported for antidumping purposes was $150 per unit, then once Commerce has countervailed the export subsidy by $100, they should increase the export price to $250 in order to not apply a double remedy. But, even where the adjustment for export subsidies is made, the exporter respondents still do not obtain the complete adjustment because any negative dumping will not offset the $100 countervailing duty that must be made as demonstrated in an accurate rendition of Defendant's hypothetical.

| Scenario 1 - With Adjustment for Export Subsidy | | |
|---|---|---|
| Normal Value – without any subsidy | $ 200 | a |
| Export Price | $ 150 | b |
| Unadjusted Dumping Rate | $ 50 | c=a-b |
|  |  |  |
| Export Subsidy Countervailed | $ 100 | d |

4

| | | | |
|---|---|---|---|
| Adjusted EP Price | $ | 250 | e=b+d |
| Adjusted Dumping Rate | $ | -50 | f=a-e |
| | | | |
| Combined ADD* + CVD | $ | 100 | g = d |
| * No offset to combined rate when AD is negative | | | |

| | | | |
|---|---|---|---|
| Scenario 2 - Without Adjustment for Export Subsidy | | | |
| Normal Value – without any subsidy | $ | 200 | a |
| Export Price | $ | 150 | b |
| Unadjusted Dumping Rate | $ | 50 | c=a-b |
| | | | |
| Non-Export Subsidy Countervailed | $ | 100 | d |
| | | | |
| Combined ADD + CVD | $ | 150 | h = d + c |

So, as can be seen in the hypotheticals, the fair value without any subsidy is $200. The exporter sold at $150. So, the combined antidumping and countervailing duty needed to remedy the unfair trade is $50, which would be achieved if the upward export subsidy adjustment were made and the negative antidumping margins could offset any positive antidumping margins. But, as shown in Scenario 2, the combined antidumping and countervailing duty is $150 without the adjustment, exceeding the sufficient remedy of $50 by $100, thus resulting in a double remedy.

## IV.   CONCLUSION

At pages 6 and 7 of *Defendant's Supplemental Brief*, Defendant seems to restate issues already addressed in their response brief to which Trina has already replied. *See Trina's Reply Brief*, at pages 3-9. For the reasons set forth above, *Defendant's Supplemental Brief* is unavailing and Trina respectfully requests that this Court reverse and remand this case to Commerce with instructions to recalculate Trina's margin after making changes to adjust the U.S. selling prices for countervailed export subsidies.

                Respectfully submitted,

                <u>/s/ Jonathan M. Freed</u>
                Robert G. Gosselink
                Jonathan M. Freed

                **TRADE PACIFIC PLLC**
                660 Pennsylvania Avenue, SE, Suite 401
                Washington, D.C.  20003
                (202) 223-3760

                Counsel to Plaintiffs Changzhou Trina Solar Energy
Dated:  November  30, 2018      Co., Ltd., and Trina Solar (Changzhou) Science
                and Technology Co., Ltd.