A-570-010<br>
POR: 7/31/14 – 1/31/16<br>
**Public Document**<br>
E&C/IV: JDP

**FINAL RESULTS OF REMAND REDETERMINATION**
*Changzhou Trina Solar Energy Co., Ltd. Et Al v. United States*
Court No. 17-00199, Slip. Op. 19-12 (Court of International Trade January 25, 2019)

**I.   SUMMARY**

The Department of Commerce (Commerce) prepared these final results of redetermination pursuant to the remand order of the U.S. Court of International Trade (Court), issued on January 25, 2019, in *Changzhou Trina Solar Energy Co., Ltd. Et Al v. United States*, Court No. 17-00199, Slip. Op. 19-12 (Court of International Trade January 25, 2019) (*Remand Order*).  This remand redetermination concerns the final results in the first administrative review of the antidumping duty (AD) order on certain crystalline silicon photovoltaic products (solar products), from the People's Republic of China (China) covering the period July 31, 2014, through January 31, 2016.[1]  The Court sustained, in part, and remanded, in part, certain aspects of the *Final Results*.  Specifically, on remand, the Court directed Commerce to increase Trina's[2] U.S. selling prices by the amount countervailed to offset a particular subsidy.[3]  In accordance with the Court's remand order, we have, under respectful protest,[4] increased Trina's U.S. selling prices by the amount countervailed to offset a subsidy we had determined Trina to have received

---

[1] *See Certain Crystalline Silicon Photovoltaic Products From the People's Republic of China: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2014-2016*, 82 FR 32170 (July 5, 2017) (*Final Results*), and accompanying Issues & Decision Memorandum (IDM).
[2] Changzhou Trina Solar Energy Co., Ltd./Trina Solar (Changzhou) Science and Technology Co., Ltd./Yangcheng Trina Solar Energy Co., Ltd./Turpan Trina Solar Energy Co., Ltd./Hubei Trina Solar Energy Co., Ltd.'s (collectively, Trina).
[3] *See Remand Order* at 22.
[4] *See Viraj Group, Ltd. v. United States*, 343 F.3d 1371 (Fed. Cir. 2003).

in the most recently completed segment of the corresponding countervailing duty (CVD) proceeding.[5]

On March 4, 2019, Commerce released a draft of its redetermination to interested parties and provided an opportunity to comment on the draft.[6]  On March 13, 2019, the petitioner, SolarWorld Americas Inc. ("SolarWorld") submitted comments on the Draft Remand.[7]  On March 14, 2019, Trina submitted comments on the Draft Remand.[8]  Commerce has addressed these interested parties' comments in detail below.

## II.   BACKGROUND

Commerce initiated an administrative review of the AD order on solar products from China.[9]  After determining that it would be impracticable to individually examine all companies for which a review had been initiated, Commerce limited its individual review to the exporter accounting for the largest volume of subject merchandise during the period of review.  Commerce selected Trina as the mandatory respondent.  On March 7, 2017, Commerce issued its preliminary results.[10]  After making certain changes to its preliminary calculations in response to comments raised by interested parties, Commerce published its *Final Results*.[11]  Commerce

---

[5] *See Countervailing Duty Investigation of Certain Crystalline Silicon Photovoltaic Products From the People's Republic of China:  Final Affirmative Countervailing Duty Determination*, 79 FR 76962 (December 23, 2014) (*CVD Investigation Final Determination*), and accompanying IDM.
[6] *See* Commerce's letter, "Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic of China:  Draft Results of Remand Redetermination Comment Deadline," dated March 4, 2019; *see also* Draft Results of Remand Redetermination (collectively, Draft Remand).
[7] *See* the petitioner's letter, "Certain Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules: Comments on Draft Results of Remand Redetermination," dated March 13, 2019 (Petitioner's Comments).
[8] *See* Trina's letter, "Certain Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules: Comments on Draft Results of Remand Redetermination," dated March 14, 2019 (Trina's Comments).
[9] *See Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 81 FR 20324 (April 7, 2016).
[10] *See Crystalline Silicon Photovoltaic Products From the People's Republic of China:  Preliminary Results of Antidumping Duty Administrative Review and Preliminary Determination of No Shipments; 2014-2016*, 82 FR 12793 (March 7, 2017), and accompanying Preliminary Decision Memorandum (PDM).
[11] *See Final Results*, 82 FR at 32170-71.

calculated a weighted average dumping margin of 9.61 percent for Trina and assigned this rate to the separate rate respondents.[12]

### III. REMANDED ISSUE

A subsidy is countervailable when an authority has provided a financial contribution to a person, a benefit is thereby conferred, and the subsidy is specific.[13]  The statute provides several bases for finding a subsidy specific, including when it is an export subsidy.[14]  An export subsidy is "a subsidy that is, in law or in fact, contingent upon export performance, alone or as 1 of 2 or more conditions."[15]

Pursuant to section 772(c)(1)(C) of the Act, Commerce increases the U.S. price by the amount of any CVD imposed to offset an export subsidy.  Therefore, when Commerce determines, in accordance with section 771(5A)(B) of the Act, that a countervailable subsidy is contingent upon export performance, Commerce must then adjust the U.S. price in the companion AD proceeding by the amount of any CVD imposed for that export subsidy.[16]  In the *Final Results,* Trina was not granted an export subsidy offset because Commerce did not make a determination in the CVD investigation of certain solar products from China that the Export Buyer's Credits Program was an export subsidy.[17]  Commerce's determination to countervail the program was based on facts otherwise available with an adverse inference, in accordance with sections 776(a) and (b) of the Act, as a result of non-cooperation by the Government of China (GOC).  Although Commerce determined that the program was specific within the meaning of

---

[12] *Id*.
[13] *See* section 771(5) of the Tariff Act of 1930, as amended (the Act).
[14] *See* section 771(5)(A) of the Act.
[15] *See* section 771(5A)(B) of the Act.
[16] *See* section 772(c)(1)(C) of the Act.
[17] *See CVD Investigation Final Determination*, and accompanying IDM at 15-16; *see also Final Results*, and accompanying IDM at 9-10.

section 771(5) of the Act, Commerce did not make a determination that the program in question was contingent on export performance.[18]  Thus, without a determination in the companion CVD investigation that this program provided a subsidy that was contingent upon export performance (*i.e.*, that the program was an export subsidy), consistent with Commerce practice,[19] we found it was not appropriate to increase Trina's U.S. prices pursuant to section 772(c)(1)(C) of the Act.  However, the Court concluded that Commerce "necessarily found" that the Export Buyer's Credit Program was an export subsidy, and that such a finding is "reasonably discernible" from Commerce's description of the program.[20]  The Court also concluded that here, Commerce did not question whether the Export Buyer's Credit Program was a subsidy contingent upon export.[21]  Thus, the Court held that section 772(c)(1)(C) of the Act applied, because it determined that Commerce had imposed duties on an export contingent subsidy.  The Court, therefore, remanded to Commerce to increase Trina's U.S. selling prices by the amount countervailed to offset the subsidy.[22]

---

[18] *Id.*; *see also* section 771(5A) (B) of the Act, which defines an export subsidy to be "a subsidy that is, in law or in fact, contingent upon export performance, alone or as 1 of 2 or more conditions."

[19] *See Stainless Steel Sheet and Strip from the People's Republic of China:  Preliminary Affirmative Determination of Sales at Less than Fair Value and Preliminary Affirmative Determination of Critical Circumstance*, 81 FR 64135 (September 19, 2016), and accompanying PDM at 13, unchanged in *Antidumping Duty Investigation of Stainless Steel Sheet and Strip from the People's Republic of China:  Final Determination of Sales at Less Than Fair Value and Final Affirmative Determination of Critical Circumstances*, 82 FR 9716 (February 8, 2017); *see also Circular Welded Carbon-Quality Steel Pipe from Pakistan:  Affirmative Preliminary Determination of Sales at Less Than Fair Value and Postponement of Final Determination and Extension of Provisional Measures*, 81 FR 368367 (June 8, 2016), and accompanying PDM at 13, unchanged in *Circular Welded Carbon-Quality Steel Pipe from Pakistan: Final Affirmative Determination of Sales at Less Than Fair Value*, 81 FR 75028 (October 28, 2016).

[20] *See Remand Order* at 17.

[21] *See Remand Order* at 21-22.

[22] *Id.* at 22.

**Commerce's Position:**

The Court directed Commerce to increase Trina's U.S. selling prices by the amount countervailed to offset the subsidy provided by the Export Buyer's Credits Program.[23] In the draft redetermination, under respectful protest, we complied with the Court's direction.[24]

## IV. SUMMARY AND ANALYSIS OF COMMENTS

We received the following comments on our draft redetermination from interested parties.

**The Petitioner's Comments:**

Commerce should reconsider its decision to increase Trina's U.S. selling prices by the amount countervailed to offset the China Ex-Im Bank Buyer's Credit Program. Commerce was unable to determine whether that program was an "export subsidy," as the GOC did not provide necessary information for Commerce's investigation, requiring Commerce to rely on adverse facts available. Commerce's high-level description of the subsidy program as generally relating in some way to "exported goods" does not constitute a specific determination that the program in question was contingent on export performance, which is a requirement under the statute for being considered an export subsidy. Such a finding would have been required for the offset made, under section 772(c)(1)(C) of the Act. However, as noted above, Commerce was unable to make such a finding here, as it lacked

---

[23] *Id.* at 22.

[24] We respectfully disagree with the Court's conclusions regarding Commerce's specificity finding in the CVD investigation on solar products with respect to the Export Buyer's Credit program. We note that Commerce's determination in the CVD investigation on solar products is not before the Court in this action, which concerns the first administrative review of the AD order on solar products. Additionally, we respectfully disagree that Commerce's specificity finding with respect to the Export Buyer's Credit Program in the CVD proceeding on crystalline silicon photovoltaic cells, whether or not assembled into modules (solar cells) from China contradicts or belies our finding in the CVD investigation on solar products. *See* Slip Op. at 18. (citing *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembles into Modules, from the People's Republic of China: Final Results of Countervailing Duty Administrative Review; 2012*, 80 FR 41003 (July 14, 2015), and accompanying IDM at 33.) Determinations made in distinct proceedings (*i.e.* proceedings concerning different products), and indeed, in distinct segments of the same proceeding, are based on the segment-specific information on the record and, thus, do not necessarily inform determinations made in other segments of the same proceeding or in different proceedings. *See e.g. Hyundai Steel Co. v. United States*, 279 F. Supp. 3d 1349, 1371-1372 (Ct. Int'l Trade 2017).

requisite information about the subsidy program, due to the GOC's failure to cooperate in the CVD investigation. As such, Commerce properly determined not to grant Trina an offset to its U.S. prices for the countervailed China Ex-Im Bank Buyer's Credit Program, and its reversal of that decision here is in error.

**Trina's Comment:**

Commerce correctly complied with the Court's January 25, 2019 order.

**Commerce's Position:**

Under respectful protest, we have continued to comply with the Court's direction in these final results of redetermination and have increased Trina's U.S. selling prices by the amount countervailed to offset the subsidy provided by the Export Buyer's Credits Program. The petitioner contends that Commerce's high-level description of the subsidy program as generally relating in some way to "exported goods" does not constitute a specific determination that the program in question was contingent on export performance. As we explained in the Draft Remand, we respectfully disagree with the Court's conclusions regarding Commerce's determinations with respect to the Export Buyer's Credit Program in the CVD investigation on solar products. Nevertheless, the Court directed Commerce to increase Trina's U.S. selling prices by the amount countervailed to offset the export subsidy. Accordingly, we have continued to increase Trina's U.S. selling prices by the amount countervailed to offset the export subsidy at issue in these final results of remand redetermination.

**V.     FINAL RESULTS OF REDETERMINATION**

In accordance with the Court's remand order, Commerce has increased Trina's U.S. selling prices by the amount countervailed to offset the export subsidy. Consequently, the

weighted average dumping margin applicable to Trina will be 3.42 percent.[25] Because we assigned a rate to the separate rate respondents based on Trina's dumping margin, we are also changing the rate assigned to the separate rate respondents to 3.42 percent.[26]

4/24/2019

X _____

Signed by: JEFFREY KESSLER
Jeffrey I. Kessler
Assistant Secretary
 for Enforcement and Compliance

---

[25] On November 1, 2017, the Court consolidated *Changzhou Trina Solar Energy Co. Ltd. v. United States*, Ct. No. 17-00199 (Court of International Trade July 27, 2017) and *SolarWorld Americas, Inc. v. United States*, Ct. No. 17-00217 (Court of International Trade Aug. 11, 2017).  The following separate rate respondents were enjoined from liquidation in *SolarWorld Americas, Inc. v. United States*, Ct. No. 17-00217:  BYD (Shangluo) Industrial Co., Ltd.; Chint Solar (Zhejiang) Co., Ltd.; Hefei JA Solar Technology Co., Ltd.; Perlight Solar Co., Ltd.; Shenzhen Sungold Solar Co., Ltd.; Sunny Apex Development Ltd.; and Wuxi Suntech Power Co., Ltd.
[26] *See Final Results*, 82 FR at 32171.